[No. B025899. Second Dist., Div. Three. May 25, 1988.]

MICHAEL GREENFIELD, Plaintiff and Appellant, v.
ROGER E. MOSLEY et al., Defendants and Respondents.

736

COUNSEL

Shea & Gould, Michael D. Koomer and Sherrie E. Lipsky for Plaintiff and Appellant.

Taylor, Roth, Bush & Geffner, Leo Geffner, Jesus E. Quinonez, Christopher D. Cameron, Hanna & Morton, Gregory R. Ryan and David C. Karp for Amici Curiae on behalf of Petitioner and Appellant.

Sanders & Dickerson and J. Stanley Sanders for Defendants and Respondents.

OPINION

ARABIAN, J.—

## INTRODUCTION

Michael Greenfield, doing business as Charter Management (Greenfield), appeals from the trial court order denying his petition to confirm a Screen Actors Guild (SAG) arbitration award in his favor and granting the request of Roger E. Mosley and MoLaud Productions, Inc. (collectively referred to as Mosley) to vacate the arbitration award. SAG[1] and the Association of Talent Agents (ATA)[2] each submitted amici curiae briefs in support of

[1] According to SAG, SAG is a bona fide labor organization under both state law (Lab. Code, § 1117) and federal law (Labor-Management Relations Act § 2(5), 29 U.S.C. § 152(5)). SAG represents creative talent, including actors and other artists who perform in the motion picture industry in the United States and abroad.

[2] According to ATA, there are approximately 140 members of ATA, a California non-profit, mutual benefit corporation, consisting of talent agents who represent creative talent,

Greenfield.[3] Because we find no error entitling the trial court to consider the merits of the award, we reverse and remand.

## FACTS

In January 1985, a dispute arose between the parties regarding Mosley's obligation to pay additional commissions to Greenfield as agent with respect to compensation paid Mosley under various acting engagements including Mosley's role as "T.C." in the television series "Magnum P.I." Greenfield based his claim for commissions on an agency contract which he contends was a written agreement filed with SAG in March 1978.[4] In October 1985, Greenfield filed his demand for arbitration pursuant to SAG's Codified Agency Regulations, rule 16(g), which includes the basic contract[5] between SAG, the ATA and National Association of Talent Representatives.

Rule 16(g) provides, in part, as follows: "VI(A) All disputes and controversies of every kind and nature whatsoever between an agent and his client arising out of or in connection with or under any agency contract between the agent and his client executed prior to, on, or since July 31, 1962, as to the existence of such contract, its execution, validity, the right of either party to avoid the same on any grounds, its construction, performance, nonperformance, operation, breach, continuance, or termination, shall be submitted to arbitration regardless of whether either party has terminated or purported to terminate the same. Said arbitration shall be in accordance with the arbitration provisions of Exhibit F hereto attached and made a part hereof. . . . [¶] (B) Agents shall comply with awards made by arbitration tribunals. [¶] (C) Members of the SAG are required to comply with awards

including actors. Talent agents are licensed by the Labor Commissioner of the State of California and are subject to the terms and provisions of Labor Code section 1700 et seq.

[3] Both ATA and SAG represent that they appear as amici curiae to inform the court of the significant role of arbitration in the agent-artist relationship and to protect the integrity of the arbitral system established under Rule 16(g) of SAG regulations.

[4] The demand for arbitration stated that the parties entered a written agreement about March 8, 1977, for one year (a copy of this signed agreement was attached) and that this agreement was renewed, orally and in writing, for a term of three years. According to the demand, during the term of the renewal agreement, Universal Television was granted an option to employ Mosley as a performer in the television series entitled "Magnum P.I." with six options to extend the term for one year per option. Greenfield was unable to produce this renewal agreement at the arbitration.

[5] SAG and ATA have negotiated and agreed to a basic contract on behalf of their respective memberships, which establishes the basic terms of the agent-artist relationship. Rule 16(g) governs a SAG member's right to use a talent agent and requires SAG members to use standard agency form contracts. Only talent agents whom SAG has franchised and who have agreed to obey SAG's regulations may represent SAG members in the industry. Rule 16(g) requires SAG and ATA members to submit all disputes of any kind between them to binding arbitration before the SAG arbitration tribunal.

made by arbitration tribunals. Any wilful or intentional failure or refusal of any member of the SAG to comply with an award made by an arbitration tribunal shall be deemed conduct unbecoming a member of the SAG and shall subject the member to the penalties elsewhere provided for such conduct. . . .''

On June 5 and August 11, 1986, arbitration hearings were conducted by the SAG arbitration tribunal. On July 29, 1986, following the June 5 hearing, Mosley filed a counter-demand for arbitration against Greenfield, alleging that no written contract existed between Greenfield as agent and Mosley as artist and seeking return of monetary payments made by Mosley to Greenfield. It is undisputed by the parties that the issue of the existence of a contract conforming to SAG regulations was before the arbitration panel.

On November 13, 1986, the arbitrators made their award in favor of Greenfield and against Mosley in specific sums and directed Mosley to file with SAG an accounting and thereafter pay further sums to Greenfield.

On November 25, 1986, Greenfield filed a petition for confirmation of the arbitration award in the trial court. Mosley opposed the petition and requested that the arbitration award be vacated or, in the alternative, that the award be corrected. Mosley argued that the findings and award exceeded the powers of the administrators, and the award could not be corrected without affecting the merits of the decision "in that the Award [was] made to [Greenfield] as agent under a contract *not in writing* in clear violation of the express provisions of SAG Regulations, specifically, Section IV C(1) thereof, providing that all contracts between a member of SAG and an agent not in writing shall be *void*." Mosley also argued that the award exceeded the powers of the arbitrators in that it violated the provisions of SAG regulations providing that an agent shall have no right under a void contract to receive any commission on a reasonable or other basis. Mosley also contended that there were "evident" miscalculations in the award. By declaration, Mosley's attorney related that his request to SAG to provide findings of fact and conclusions of law supporting the award was denied.[6]

At the December 12, 1986, hearing the trial court requested that counsel for Greenfield produce a copy of the written contract: ". . . I'm trying to

---

[6]SAG's response to the request explained, "Inasmuch as the Arbitration Award has been filed with the Arbitration Secretaries and has been served on the parties, the Arbitrators no longer have authority with respect to the matter; they are 'Functus Officio.' In any event, in the absence of a specific statutory requirement or provision in the collective bargaining agreement, there is no requirement that arbitrators provide written findings of fact or provide written opinions. The sole requirement as to content is that the Award be in writing. Further, the form of Award was presented to the parties at the commencement of the arbitration and was accepted."

determine whether the arbitrator, there being no writing, the arbitrator exceeded his jurisdiction."

Counsel for Greenfield explained that it was not known what the arbitrators found regarding the existence of a written agreement, but that was one of the issues addressed in the arbitration and evidence was submitted on that issue.[7] Mosley's counsel also stated that it was an issue raised throughout the hearing, that it was a "continuing objection," arguing that it was a threshold consideration of jurisdiction.

The trial court denied the petition to confirm the award and granted Mosley's motion to vacate the award. In doing so, the trial court stated, "It is undisputed that the arbitrator(s) although having broad powers, cannot issue an award that is violative of the 'agency regulations.' The 'agency regulations' (SAE [sic] Regulations) require all agency contracts, as is in issue here, to be in writing. Any such contracts not in writing are void. Although petitioner in effect argues the arbitrators are presumed to have found a written contract in compliance with SAE [sic] Regulations, none was produced at the request of the court. It is undisputed that at the arbitration hearing no signed written contract between Petitioner and Respondent was produced or admitted into evidence. This is not a determination as to 'sufficiency of evidence' which petitioner correctly argues cannot be evaluated by the court. Rather, the court, in exercising its responsibility under CCP 1286.2, has, as it must, made certain determination[s] from the papers and documents and argument, which lead to the conclusion that Sect. 1286.2(d) is applicable."[8]

Greenfield filed a motion for reconsideration supported by declarations from witnesses to the arbitration, one of the arbitrators and counsel, stating that the issue of jurisdiction was addressed by the arbitrators, the parties had agreed at the commencement of the hearings to the form of the award which is the form ordinarily used by SAG arbitration tribunals, and both parties had presented evidence on the issue of the existence of a written agreement, its compliance with SAG requirements, and its registration with SAG. Greenfield argued that the trial court's efforts to reevaluate the evidence was inappropriate, and that even if the court's erroneous standard of review was adopted there was substantial evidence to support the arbitration award.

---

[7] Greenfield's counsel also pointed out that the reason there was a dispute was that there was no writing found and Greenfield contended that it had been lost or destroyed.

[8] Code of Civil Procedure section 1286.2, subdivision (d) provides that "the court shall vacate the award if the court determines that . . . . [t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

In response, Mosley submitted the declaration of his counsel asserting that the certain facts set forth in the declarations submitted by Greenfield were unsupported by the record and "totally untrue."[9] He submitted the evidence he introduced at the arbitration hearings, to refute the existence of a written agreement, copies of Greenfield's filing with SAG during the relevant period. Mosley argued that section IV.C., subdivision (1) of SAG regulations made "a conclusive determination that an Agency Agreement not filed with SAG is void." He lodged the transcript of the arbitration proceeding with the trial court.[10]

The trial court granted the motion for reconsideration and upon reconsideration vacated the award. In so ruling, the trial court stated, in part, "Given the undisputed facts that no original or copy of a written contract between the parties is present or was presented to the arbitration panel, and that no evidence exists or was presented showing that the purported written contract complied with the regulations, e.g., as to form, filling in of blanks, executing, delivering, filing, etc., such undisputed state of the facts, is 'tantamount to an error of law appearing on the face of the award.' (See *Abbott* v. *Calif. State Auto Assn.* 68 C.A.3d 763, 771.) Obviously, the award causes substantial injustice because respondent is ordered to pay money, at best pursuant to an unauthorized written contract."

## CONTENTIONS

Greenfield's major contentions are that the trial court erred in examining the evidentiary record and legal reasoning supporting the award, because there was no error on the face of the award nor an equivalent, and that the trial court's reliance on *Abbott* v. *California State Auto. Assn.* (1977) 68 Cal.App.3d 763 [137 Cal.Rptr. 580] was misplaced because here there was no stipulation or concession tantamount to an error of law appearing on the face of the award.[11]

---

[9] Mosley argued that Greenfield had never contended until now that the agency agreement was lost or destroyed. However, the copies of Greenfield's brief to the arbitration panel, submitted by Mosley to the trial court, reveal that Greenfield argued and presented evidence to establish the existence of an enforceable agency contract. This evidence consisted of the testimony of Greenfield and an independent, nonparty witness that an agreement dated March 6, 1978, in the form submitted to the tribunal, was signed by both parties and was subsequently forwarded to SAG in the ordinary course of business and circumstantial evidence regarding business conduct of the parties consistent with the existence of such an agreement.

[10] Greenfield requested that the trial court not review the transcripts to maintain the confidentiality of the arbitration proceedings, as had been stipulated by the parties to the arbitration and ordered by the arbitrators.

[11] Greenfield's related contentions are: (1) "Even assuming the trial court had the power to review the evidence and briefs submitted to the arbitrators, the trial court erred in applying an independent review standard rather than the applicable substantial evidence standard." (2) "The trial court erred in arrogating to itself the construction and application of the terms

Amici emphasize the important role of arbitration in the resolution of disputes between artists and agents and also contend the trial court exceeded its authorized scope of review.[12]

Mosley disagrees, contending that the trial court did not err in examining the evidentiary record upon which the arbitration award was based, relying on *Abbott* v. *California State Auto. Assn., supra,* 68 Cal.App.3d 763, as authority, "because the undisputed facts were tantamount to an error appearing on the face of the award." Mosley also contends, "Assuming the trial court had the power to review the evidence and briefs submitted to the arbitrators, the trial court did not err in applying an independent review standard rather than a substantial evidence standard."[13]

### DISCUSSION

1. *The trial court's scope of review of an arbitration award is narrowly circumscribed.*

The parties to this dispute are bound by the terms of the basic contract, a collective bargaining agreement subject to the federal Labor-Management Relations Act (29 U.S.C. § 141 et seq.). (See *H.A. Artists & Associates* v. *Actors' Equity Assn.* (1981) 451 U.S. 704 [68 L.Ed.2d 558, 101 S.Ct. 2102].) ▮ In the enforcement of provisions of collective bargaining agreements obligating the parties to arbitrate disputes, state courts exercise concurrent jurisdiction with federal courts and apply federal law. (*O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 486 [30 Cal.Rptr. 452, 381 P.2d 188].)

---

of the SAG Agreement." (3) "The arbitrators were empowered to determine the appropriate construction of the SAG regulation (Rule 16g) as the same applied to the *Greenfield* v. *Mosley* proceedings, and award equitable relief had they so elected."

[12]SAG contends: (1) "Under Federal Labor Law, which preempts California Law in this case, the superior court's authority to review the arbitrator's award was extremely narrow." (2) "The superior court erred as a matter of federal law when it ignored the 'plausible interpretation' of the contract." (3) "The fact that the SAG arbitration tribunal did not give reasons for its award is immaterial and does not change the extremely narrow scope of judicial review applicable to this arbitration award."

ATA contends: (1) "Arbitration of disputes between agents and artists is a well established and recognized practice." (2) "The trial court strayed from the established tradition of judicial deference to arbitrators' decisions by looking beyond the face of the award and reviewing the record under formal evidentiary rules rather than permitting the panel to rely on its powers to resolve disputes under principles of justice, equity, and the evidence before them." (3) "If the trial court's decision is affirmed, the precedent will erode the effectiveness of the ATA/SAG arbitration system for resolving labor disputes between artists and talent agents."

[13]Mosley's related contentions are: (1) "The trial court did not err in considering the terms of the SAG agreement." (2) "The arbitrators were not empowered to determine the appropriate construction of the SAG Regulation (Rule 16(g)) as the same applied to *Greenfield* v. *Mosley* proceeding and award equitable relief had they so elected."

In the Steelworkers' Trilogy (*Steelworkers* v. *American Mfg. Co.* (1960) 363 U.S. 564 [4 L.Ed.2d 1403, 80 S.Ct. 1343], *Steelworkers* v. *Warrior & Gulf Co.* (1960) 363 U.S. 574 [4 L.Ed.2d 1409, 80 S.Ct. 1347], and *United Steelworkers* v. *Enterprise Corp.* (1960) 363 U.S. 593 [4 L.Ed.2d 1424, 80 S.Ct. 1358]), the United States Supreme Court acknowledged the federal policy of settling labor disputes by arbitration and pronounced a rule of judicial restraint in the review of arbitration awards. "[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." (*Steelworkers* v. *Enterprise Corp., supra,* 363 U.S. at p. at 599 [4 L.Ed.2d at p. 1429].)

■ The California Supreme Court also has acknowledged the strong public policy in favor of arbitration: "[A]rbitration has become an accepted and favored method of resolving disputes, praised by the courts as an expeditious and economical method of relieving over-burdened civil calendars." (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706 [131 Cal.Rptr. 882, 552 P.2d 1178]; citations omitted.) This favorable attitude toward arbitration is reflected in the California arbitration statute, Code of Civil Procedure section 1280 et seq., and the Federal Arbitration Act, 9 United States Code section 1 et seq. Arbitration is especially favored in regard to labor disputes. (See, e.g., *Steelworkers* v. *Warrior & Gulf Co., supra,* 363 U.S. 574, 578-579 [4 L.Ed.2d 1409, 1415]; *That Way Production Co.* v. *Directors Guild of America, Inc.* (1979) 96 Cal.App.3d 960, 966 [158 Cal.Rptr. 475].) Grounds for vacation of an arbitration award are governed by statute. (9 U.S.C. § 10;[14] Code Civ. Proc., § 1286.2.)[15]

---

[14] United States Code, title 9, Arbitration, section 10 provides: "In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators."

In addition, under federal law, a "district court may vacate an arbitral award which exhibits manifest disregard of the law." (*Sheet Metal Wkrs. Intern. Ass'n.* v. *Kinney Air Cond.* (9th Cir. 1985) 756 F.2d 742, 746; citation omitted.)

[15] Code of Civil Procedure section 1286.2, provides: "Subject to Section 1286.4, the court shall vacate the award if the court determines that: [¶] (a) The award was procured by corruption, fraud or other undue means;

■ Generally, every reasonable intendment is indulged to give effect to arbitration proceedings: "It has been aptly stated: 'Arbitration is a voluntary procedure for settling disputes, leading to a final determination of the rights of the parties. The policy of the law is to favor arbitration, and every reasonable intendment is indulged to give effect to such proceedings. [Citation.] Once a valid award is made by the arbitrator, it is conclusive on matters of fact and *law* and all matters in the award are thereafter res judicata.' . . .

"Only '[a] limited form of judicial review of arbitration awards is provided by statute.' [Citation] The only grounds upon which a court—trial or appellate—may vacate an arbitration award are set forth in Code of Civil Procedure section 1286.2.' It is to be noted that an error of law made by an arbitrator is not a ground specified in Code of Civil Procedure section 1286.2 for vacating an arbitrator's award.

". . . 'Otherwise courts may not interfere with arbitration awards. Courts may not examine the merits of the controversy, the sufficiency of the evidence supporting the award, or the reasoning supporting the decision. [Citation.] A court may not set aside an arbitration award *even if the arbitrator made an error in law or fact.* [Citations.]' " (*Lindholm* v. *Galvin* (1979) 95 Cal.App.3d 443, 450-451 [157 Cal.Rptr. 167].)

"[F]ederal courts play a limited role in reviewing the substantive merits of an arbitrator's award. [Citation.] Courts lack authority to decide not to enforce an arbitrator's award when that award 'draws its essence from the collective bargaining agreement,' [citation], even where the arbitrator has committed an error of fact or law in interpreting the agreement. [Citation.]" (*Local No. P-1236, Etc.* v. *Jones Dairy Farm* (7th Cir. 1982) 680 F.2d 1142, 1144, fn. omitted.)

California courts have recognized that "[u]nder certain circumstances an award based on an error in law may be set aside on the ground that it was in excess of the arbitrator's powers. (Code Civ. Proc., § 1286.2, subd. (d); *Abbott* v. *California State Auto. Assn.* (1977) 68 Cal.App.3d 763, 770 [ ].) A trial court, however, is limited in its authority to vacate the award of an

"(b) There was corruption in any of the arbitrators;
"(c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator;
"(d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or
"(e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

arbitrator, even in the event of an error of fact or law. The mere fact that an arbitrator reached an erroneous conclusion based on an error of law which does not appear on the face of the record will not invalidate the award; on the other hand, where the error appears on the face of the award and causes substantial injustice the award may be vacated. (*Hirsch* v. *Ensign* (1981) 122 Cal.App.3d 521, 529 []; *Abbott* v. *California State Auto. Assn., supra,* 68 Cal.App.3d at p. 771.)" (*Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1090-1091 [213 Cal.Rptr. 62].)

### 2. *Failure to produce the written agreement does not justify vacation of the arbitration award.*

■ Mosley argues that SAG regulations require "that an award in a SAG arbitration be based on a signed written agency agreement."[16] He asserts: "Such an agreement between the parties to this appeal does not exist, was not presented at the arbitration hearing, and was not presented at the hearing in the trial court to confirm the award. Instead of producing a signed written agency agreement, Greenfield presented a variety of arguments suggesting a lost agreement, a best-evidence exception and substantial performance. Mosley at all times denied such an agreement was every [*sic*] signed or entered into. Notwithstanding, the arbitrators made an award for Greenfield."

The trial court ruled that the arbitration panel acted in excess of jurisdiction because there was no written contract complying with SAG regulations as to form and content, filed with SAG, producible in the trial court. The trial court apparently considered this a prerequisite to the arbitrators' authority to arbitrate and make an award in favor of Greenfield. This was error. There is no question that the dispute between Greenfield and Mosley was subject to arbitration pursuant to rule 16(g).[17] As members of SAG and ATA, the parties were required to arbitrate pursuant to the negotiated agreement between these organizations. Furthermore, rule 16(g), Section

---

[16] He bases this argument on SAG regulation rule 16(g), section IV.C., subdivisions (1) and (2) which provide as follows: (1) "All contracts between a member and an agent must be in writing. All contracts not in writing or not complying with these Regulations, whether as to form, filing, filling in of blanks, execution, delivery, filing, or otherwise, shall be void. . . The agent shall have no right under such void contract to receive any commission on a reasonable or other basis for services rendered or otherwise."

(2) "All agency contracts shall be signed at least in triplicate of which one original must be delivered by the agent to SAG within the time specified elsewhere, one copy must be delivered to the member, and the remaining executed copies may be retained by the agent."

[17] Mosley's counter-demand for arbitration against Greenfield, based upon the alleged nonexistence of a written agreement, in effect acknowledged this jurisdiction.

VI. A expressly covers disputes concerning the *existence* and *validity* of an agreement.[18]

Mosley's argument totally ignores the scope of arbitrable issues provided by SAG regulations. The issue of the existence of a written agreement, and its compliance with SAG regulations, clearly falls within the arbitration panel's jurisdiction. It is of no consequence that the actual written document could not be produced during the arbitration proceedings or in the trial court.

### 3. *The trial court exceeded its jurisdiction when it considered the merits of the dispute.*

■ California law is well settled that in the absence of an error appearing on the face of the award, no further inquiry by the trial court is proper. (*Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn., supra,* 166 Cal.App.3d at pp. 1090-1091.)[19] Nevertheless, Mosley argues that the trial court did not err in examining the evidentiary record upon which the award was based because the error of the arbitrators was tantamount to error on the face of the award.

Both the trial court in its decision and Mosley on appeal rely on *Abbott* v. *California State Auto. Assn., supra,* 68 Cal.App.3d 763, for this proposition. However, *Abbott* is clearly inapposite. That case involved a claim by an insured against her insurer under the uninsured motorist's coverage of her policy. In arbitration, the arbitrator found that her employer's insurer was the primary carrier for the accident in question and therefore denied Abbott's claim against her own insurer. In an action by the insured for declaratory relief and to vacate the arbitrator's award, it was stipulated at trial that the employer's policy contained no uninsured motorist indorsement, while plaintiff's policy contained an uninsured motorist indorsement. The trial court determined that uninsured motorist coverage was provided by plaintiff's insurer and not by her employer's insurer, and that the arbitrator

---

[18] "All disputes and controversies of every kind and nature whatsoever between an agent and his client arising out of or in connection with or under any agency contract between the agent and his client executed prior to, on, or since July 31, 1962, as to *the existence of such contract, its execution, validity,* the right of either party to avoid the same on any grounds, its construction, performance, non-performance, operation, breach, continuance, or termination, shall be submitted to arbitration regardless of whether either party has terminated or purported to terminate the same." (Italics added.)

[19] In *Ray Wilson, supra,* the trial court denied a petition by a general contractor to confirm an arbitration award in a contract dispute and granted the hospital's motion to vacate. Similar to Mosley's argument here, the hospital had argued that the arbitrators acted in excess of jurisdiction by making an award which disregarded certain provisions of the parties' contract. The appellate court reversed the trial court's order.

made an error in law in denying plaintiff's claim against her insurer, based on the finding that the employer's insurer, as the primary carrier, provided for uninsured motorist coverage. At the same time, however, the trial court confirmed the award on the ground it lacked power to set it aside.

The appellate court in *Abbott* reviewed the case law and concluded: "[T]he mere fact that the arbitrator reached an erroneous conclusion based on an error in law which does not appear on the face of the record will not invalidate the award. On the other hand, where the error appears on the face of the award and causes substantial injustice the award may be vacated. We note, too, that where the arbitrator himself has admitted that he has not acted in accordance with principles of law such admission may be received as evidence before the trial court and in such case will be treated as if the error of law appears on the face of the award.

"In the present case the error in law or the failure to act according to legal principles does not appear on the face of the award nor do we have any admission or statement by the arbitrator that he committed an error in law or that he failed to make a determination according to legal principles. Yet we do have at the hearing before the trial court a stipulation (as well as evidence of the fact) that Liberty's policy does not provide uninsured motorist coverage and that the only such coverage available to Abbott is that provided for in CSAA's policy. *This concession, in our opinion, is tantamount to an error in law appearing on the face of the award and has the same efficacy as if the arbitrator himself had stated or admitted that he committed an error in law in making the award.* There can be no question that the award of the arbitrator in the present case caused a substantial injustice." (*Abbott* v. *California State Auto. Assn., supra,* 68 Cal.App.3d at 771, italics added, citations omitted.)

There is no stipulation or concession tantamount to an error of law appearing on the face of the award here. As explained above, the failure to produce the original signed agreement is not tantamount to an error of law on the face of the award. It was error for the trial court to examine the evidentiary record before the arbitration panel, which it apparently did in regard to the issue of the agreement's compliance with SAG regulations.[20]

---

[20] The trial court's observation that it was an undisputed fact that "no original or copy of the written contract between the parties is present or was presented to the arbitration panel," although correct, is irrelevant, as discussed above. The other "undisputed fact" referred to by the trial court ("that no evidence exists or was presented showing that the purported written contract complied with the regulations, e.g. as to form, filling in of blanks, executing, delivering, filing, etc.") was not apparent to the trial court without an improper examination of the arbitration proceedings and in fact was contrary to the record of the arbitration proceedings as well as the trial court proceedings.

Neither federal nor California law permits such interference with the arbitral process. (See *United Paperworkers International Union* v. *Misco* (1987) 484 U.S. 29 [98 L.Ed.2d 286, 298, 108 S.Ct. 364].)

The arbitration award must be confirmed. Therefore, the trial court's order vacating the arbitration award is reversed.

### DISPOSITION

The order is reversed with directions to the trial court to enter judgment confirming the arbitration award in favor of Greenfield. Greenfield is awarded costs on appeal.

Danielson, Acting P. J., and Croskey, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 10, 1988.

---

Because there is no basis for examining the correctness of the award, we need not consider the issues raised by the parties concerning the merits of the award.