**WARTH LINE, LTD., Petitioner,**

v.

**MERINDA MARINE CO., LTD., Respondent.**

**No. 91 Civ. 4916 (SWK).**

United States District Court, S.D. New York.

Nov. 12, 1991.

DeOrchis & Partners by John A. Orzel, Mario E. DeOrchis, New York City, for petitioner.

Haight, Gardner, Poor & Havens by Donald Kennedy, New York City, for respondent.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Petitioner Warth Line, Ltd. (the "Charterer"), moves to vacate an arbitration

award dated April 15, 1991 (the "Decision and Award"), pursuant to the United States Arbitration Act, 9 U.S.C. § 10(a)(4), on the grounds that the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Respondent Merinda Marine Co., Ltd. (the "Owner"), opposes the petition to vacate and seeks confirmation of the Award.

## BACKGROUND

In March of 1987, the Owner and Charterer entered into a Time Charter Party contract for the vessel M/V LEONIDAS GLORY, at $1,950 per day (the "Charter Party"). The Charter Party called for the vessel to load granite blocks at Mangalore, India, during April and May, 1987. These granite blocks were to be discharged at Santander, Spain, St. Malo, France and Antwerp, Belgium. On route to Santander, the vessel encountered heavy weather which the Owner claimed caused delays in arriving at the designated ports of discharge.

Consequently, the Charterer claimed damages for underperformance in the amount of $39,622.00, based upon a delay of 11.34 days as compared to a routine voyage. The Charterer asserted its claim for underperformance in the Court of Commerce in Antwerp, under Belgian law. At the Charterer's request, the Court of Commerce issued a Detention Order which prevented the LEONIDAS GLORY from sailing from the court's jurisdiction, and appointed a neutral Nautical Surveyor to investigate the vessel's records in order to determine and report the causes of the alleged delay.

The Charterer informed the Owner that in lieu of arresting the vessel it would accept a letter of guarantee in the amount of $45,000, as security for any liability due to the vessel's underperformance. Although the Owner had made arrangements to drydock the vessel for a Class Survey in a Netherlands shipyard the day after discharge, May 27, 1987, and an arrest would prevent the Owner from going on drydock as scheduled, the Owner refused to post the security. As a result, the Charterer applied to the Belgian Court and obtained an order of arrest for the LEONIDAS GLORY. Under Belgian law,[1] the Owner was permitted to contest the arrest but failed to do so, even though it was represented in Antwerp.[2]

The vessel was subsequently arrested on May 26, 1987, after completion of discharge at Antwerp. After the arrest, the Owner posted adequate security, the arrest was lifted and the vessel was allowed to sail from Antwerp. However, due to the arrest the vessel was delayed in Antwerp for two days.

During the vessel's detention, the Nautical Surveyor determined that the LEONIDAS GLORY had indeed underperformed for a total of 118 hours, or 4 days and 22 hours (as opposed to the 11.34 days claimed

---

1. The Charterer has properly raised the issue of Belgian law in accordance with Rule 44.1 of the Federal Rules of Civil Procedure. The Charterer has submitted the Declaration of Bernard Insel, an attorney licensed to practice before the Courts of the Kingdom of Belgium, together with its Affidavits and Memoranda in Support of Charterer's Motion to Vacate the Arbitration Decision and Award Dated April 15, 1991, and the Court has relied upon the Declaration in its consideration of the issues raised under Belgian law. Rule 44.1 provides as follows:

    A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal

    Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.
    Fed.R.Civ.P. 44.1.

2. According to the Declaration of Bernard Insel, the Owner was represented at Antwerp by Captain Mantzaris, the same person who later acted as the Owner's advocate at the New York arbitration hearing. Declaration of Bernard Insel, Exhibit "E" to M.E. DeOrchis Affidavit, sworn to July 15, 1991 ("DeOrchis Aff."), at ¶ 6. The Decision and Award supports this contention as the Arbitration Panel majority allowed $4,000 of "fees and expenses" paid to Captain Mantzaris for his representation of the Owner in connection with the arrest at Antwerp. Decision and Award, Exhibit "A" to DeOrchis Aff., at 20.

by the Charterer) on the voyage from Mangalore to Antwerp. The Surveyor also found that the Charterer should be compensated in the amount of $17,709.89.

After this determination, the Owner invoked the arbitration clause of the Charter Party contract,[3] and sought arbitration of the various claims and cross-claims at New York. The claims and cross-claims were as follows: (1) The Charterer claimed the $17,708.89 to which the Nautical Surveyor determined it was entitled as a result of underperformance; (2) The Owner claimed damages for unpaid freight, repairs necessitated by stevedores, fees and expenses incurred at Antwerp due to the arrest, expenses incurred due to the postponement of scheduled drydocking while the vessel was under arrest at Antwerp, including the costs of arranging drydocking in Greece, the cost of the extra drydocking, the costs of the arbitration proceeding and the cost of the letter of guarantee posted in Antwerp. Pre-hearing submissions were presented to a Panel of three arbitrators (the "Panel"), which was formed in accordance with Clause 17, and a hearing was held on March 29, 1990.

On April 15, 1991, the Panel issued a Decision and Award in which it denied the Charterer's claims. Contrary to the Nauti-

cal Surveyor, the Panel concluded that the weather conditions during the voyage and the Captain's concern for safety were serious enough to justify the Captain's decision to seek shelter at Crete and reduce the speed of the vessel. Thus, the delay was justified, and the Charterer was not entitled to recover for underperformance. The Panel further concluded that the arrest of the vessel was

> wrongful and unjustified under the circumstances because Charterers could have started their investigation of alleged speed loss at the first two discharge ports instead of waiting till [sic] two hours before completion of discharge. Owners would then have had plenty of time to grant Charterers Letter of Undertaking without the vessel being delayed two days.

Decision and Award, Exhibit "A" to DeOrchis Aff., at 15.

Based upon these findings, the Panel awarded the Owner $75,068.28. According to the Charterer, $49,013 of this award was intended to reimburse the Owner for expenses relating to what the arbitrators deemed the "wrongful and unjustified" arrest.[4] The Charterer moves to vacate only this portion of the award.[5] The Charterer

---

3. The arbitration clause provides:
   should any dispute arise between Owners and the Charterers the matter in dispute shall be referred to three persons at N.Y., one to be appointed by each of the parties hereto and the third by the two so chosen. Their decision or that of any two of them shall be final and for the purpose of enforcing any award, this agreement may be made a rule of the court. The arbitrators shall be commercial men.
   Charter Party, Exhibit "B" to DeOrchis Aff., at Clause 17.

4. The components of the $49,013 award are as follows:
   3) Amount of expenses incurred at Antwerp: $8,427.33,
   4) & 5) Expenses for 2nd. drydocking in Greece and Fees paid to Grecian Maritime: $8,454.23,
   6) Fees paid to Grecian Maritime: $6,643.83,
   7) For deviation (to Greece) expenses: $6,076.79,
   10) Release of Cash/Guaranty: $19,410.95.
   Decision and Award, Exhibit "A" to DeOrchis Aff., at 20–21.

5. On page 6 of its Memorandum of Law in Support of Charterer's Motion to Vacate the Arbitration Decision and Award Dated April 15, 1991 ("Pet.Mem."), the Charterer claims that it "challenges only those items of the award which the Panel Majority granted as arising from the supposedly 'wrongful arrest'." Further, the Charterer specifically states that it is not asking this Court to review all the evidence in the arbitration or to redecide the issue of underperformance. Pet.Mem., at 12. Nevertheless, on page 7 of Pet.Mem., the Charterer alleges that the arbitrators also exceeded their powers under 9 U.S.C. § 10(a)(4) by completely disregarding the findings of the Nautical Commission expert appointed by the Court of Commerce at Antwerp. Since the Nautical Surveyor was appointed only to investigate and report upon the causes of the delay, and not the issue of arrest, see Decision and Award, Exhibit "A" to DeOrchis Aff., at 5, it appears as if the Charterer sets forth two bases for their claim that the arbitrators exceeded their powers: (1) the arbitrators' decision that the arrest was "wrongful and unjustified," and (2) the arbitrators' disregard for the findings of the Nautical Surveyor. Thus, in its

alleges that in awarding the Owner $49,013 for expenses incurred in connection with the Belgian arrest, the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

## DISCUSSION

The United States Arbitration Act, 9 U.S.C. § 10(a), provides that either party to an arbitration may move to vacate the arbitration award. The grounds for vacating an arbitration award, however, are extremely limited. *See Sweeney v. Morganroth*, 451 F.Supp. 367, 369 (S.D.N.Y.1978) (court's review of an arbitrator's award is necessarily "severely limited," being confined to the grounds specified in 9 U.S.C. § 10). They are as follows:

(1) Where the award was procured by corruption, fraud, or undue influence.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10(a)(1–5).

In addition, an arbitration award may be vacated if the arbitrators exhibit a "manifest disregard of the law." *Wilko v. Swan*, 346 U.S. 427, 436–437, 74 S.Ct. 182, 187–188, 98 L.Ed. 168 (1953). Although no court has clearly defined the boundaries of this common law doctrine, it is apparent that it does not significantly expand the statutory bases for vacating an award. In fact, it is a very limited doctrine. In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930 (2d Cir.1986), the Second Circuit concluded that "manifest disregard of the law" "clearly means more than error or misunderstanding with respect to the law." *Id.* at 933; *see also Carte Blance (Singapore) Pte., Ltd. v. Carte Blance (Int'l) Ltd.*, 888 F.2d 260, 265 (2d Cir.1989) (citing *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892–893 (2d Cir.1985)). It went on to say that:

> The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it. *Bell Aerospace Company Division of Textron, Inc. v. Local 516*, 356 F.Supp. 354, 356 (W.D.N.Y.1973), *rev'd on other grounds*, 500 F.2d 921 (2d Cir.1974). To adopt a less strict standard of judicial review would be to undermine our well established deference to arbitration as a favored method of settling disputes when agreed to by the parties. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564 [80 S.Ct. 1343, 4 L.Ed.2d 1403] (1960).

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 808 F.2d at 933–934 (other citations omitted).

The Charterer relies on both § 10(a)(4) of the Arbitration Act and the common law notion of "manifest disregard of the law" to support its motion to vacate the award.

### A. Disregard of the Findings of the Nautical Surveyor

The Charterer alleges that the arbitrators exceeded their powers under 9 U.S.C. § 10(a)(4) when they "completely disregarded the findings of the Nautical Commission expert appointed by the Court of Commerce at Antwerp," without taking testimony from any witness with personal

discussion below, the Court addresses both issues.

knowledge of the voyage. Pet.Mem., at 7. To support its allegation that the arbitrators exceeded their powers, the Charterer points to the following conclusion by the arbitrators:

the Court investigator's evaluation and arbitrary adjustment of Charterer's claim was improper and beyond his function to determine the condition of the vessel and causes of delay. He was not appointed to judge or make a quantitative determination of the Charterer's alleged claim. That function is one reserved for the arbitrators.

Decision and Award, Exhibit "A" to DeOrchis Aff., at 15. For the reasons set forth below, the Court finds the Charterer's arguments unpersuasive.

The Charter Party clearly indicates that it was the function of the arbitrators to make a final determination of the Charterer's claims. Clause 17 of the Charter Party states:

That should *any dispute* arise between Owners and the Charterers the matter in dispute shall be referred to three persons in N.Y., one to be appointed by each of the parties hereto and the third by the two so chosen. Their decision or that of any *two* of them shall be final and for the purpose of enforcing any award, this agreement may be made a rule of the court. The arbitrators shall be commercial men. (emphasis added)

Charter Party, Exhibit "B" to DeOrchis Aff., Clause 17. It is therefore clear that the dispute about underperformance was properly submitted to arbitration and was to be determined by the arbitrators rather than the Nautical Surveyor. The issue thus becomes whether the arbitrators exceeded their powers in deciding the question of underperformance.

The Second Circuit has determined that when considering matters properly under submission, such as the dispute about underperformance, arbitrators have broad determinative powers, and the role of the courts is limited to ascertaining whether there exists one of the specific grounds for the vacation of an award. *Saxis Steamship Co. v. Multifacs Int'l Traders, Inc.,*

375 F.2d 577, 581 (2d Cir.1967); *see also Reynolds Securities, Inc. v. Macquown,* 459 F.Supp. 943, 945 (W.D.Pa.1978). In addition, a court may not review the record of the arbitration proceeding for errors of law or fact. *Saxis Steamship Co.,* 375 F.2d at 581–582. Thus, the merits of the controversy submitted to arbitration may not be reexamined by any court. *Reynolds Securities, Inc.,* 459 F.Supp. at 945. (citing *Catz American Co., Inc. v. Pearl Grange Fruit Exchange, Inc.,* 292 F.Supp. 549 (S.D.N.Y.1968)). Further, in handling evidence, an arbitrator "need not follow all the niceties observed by the federal courts. He need only grant the parties a fundamentally fair hearing." *Bell Aerospace Co. Div. of Textron v. Local 516, Int'l Union, Etc.,* 500 F.2d 921, 923 (2d Cir.1974).

These well-settled principles establish that the arbitrators might properly have disregarded the Surveyor's report without exceeding their powers under § 10(a)(4). Assuming, *arguendo,* that the arbitrators were required to consider the Surveyor's findings in order to give the parties a fair hearing, the Record establishes that the arbitrators gave the Surveyor's report due consideration. In fact, the Panel's Decision and Award, dated April 15, 1991, clearly indicates that the arbitrators carefully examined the Surveyor's report as well as all other relevant evidence, including, the terms of the Charter Party, daily weather station reports, periodic reports of the Master, daily entries in the vessel's log book, Decision and Award, Exhibit "A" to DeOrchis Aff., at 13–15, and simply came to a conclusion contrary to the Belgian investigator. Thus, there is no basis for concluding that the arbitrators exceeded their power with respect to the findings of the Nautical Surveyor.

**B. Determination That Arrest Was "Wrongful and Unjustified"**

■ The Charterer argues that Belgian law expressly provides for the arrest of a vessel in order to secure a claim for damages against the vessel, and contends that since the vessel was present in Belgium, only the Belgian Court had jurisdiction to

order the arrest of the vessel or declare the arrest wrongful. The Charterer thus urges the Court to conclude that any objection to the arrest by the Owner had to be made to the Belgian Court[6], not to the New York arbitrators. Finally, the Charterer contends that the Panel's determination that the arrest was "wrongful and unjustified" was a direct intrusion on the jurisdiction of the Belgian Court; in setting themselves up as an "appellate court" and determining that the arrest was "wrongful and unjustified," the arbitrators exceeded their powers under § 10(a)(4) and the common law doctrine of "manifest disregard of the law."

The Court disagrees. As stated above, Clause 17 of the Charter Party mandates that "should *any dispute* arise ... the matter in dispute shall be referred to three persons in N.Y." (emphasis added). This language has been interpreted to mean that arbitration is not strictly limited to claims for breach of the Charter Party. *See In re Noble Navigation Corp.*, No. 83–3983, slip op. at 1, 1984 WL 432 (S.D.N.Y. June 4, 1984); *Miletic v. Holm & Wonsild*, 294 F.Supp. 772, 775 (S.D.N.Y.1968) (court emphasized that identical clause reaches "any dispute" between the parties, and is not limited to claims "arising under the charter"). Rather, this clause is broadly construed to encompass any dispute "arising out of the maritime venture initiated by the charterpart[ies]." *In re Noble Navigation Corp.*, slip op. at 1 (citing *In re Canadian Gulf Line*, 98 F.2d 711, 714 (2d Cir. 1938)).

In this case, the Charterer procured the arrest of the vessel to secure its claims for delay and underperformance. Such claims undoubtedly arise under the Charter Party and, thus, out of the maritime venture initiated by that Charter Party.[7] As such, the Court finds that the dispute over the arrest of the vessel arises out of the maritime venture initiated by the charterparties, *See*

*In re Noble Navigation Corp.*, slip op. at 2, and is subject to arbitration under Clause 17.

Further, the Court rejects the Charterer's contention that the propriety of the arrest is within the exclusive jurisdiction of the Belgian Court. In *In re Noble Navigation Corp.*, the court concluded that nothing about a claim for wrongful arrest, or any other abuse of judicial process, makes it inherently unsuited for arbitration. *Id.* at 3. The court went on to say that the court which orders a vessel's arrest does not have exclusive jurisdiction vis-a-vis a properly constituted arbitration panel. *Id.* at 4. Further, the court noted that since all arbitrations in some sense "oust the jurisdiction" of the courts, *see Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978 (2d Cir.1942), there was no reason to act contrary to the public policy favoring arbitration and exclude claimed abuses of judicial process from arbitration proceedings. *In re Noble Navigation Corp.*, slip op. at 4.

Accordingly, the Court finds that the Arbitration Panel neither exceeded its powers under § 10(a)(4) nor exhibited a "manifest disregard of the law" when it concluded that the arrest of the vessel was "wrongful and unjustified."

## CONCLUSION

For the foregoing reasons, Charterer's motion to vacate all or any portion of the arbitrators' Decision and Award of April 15, 1991, is denied. The Decision and Award is confirmed in all respects. This Order closes the case.

SO ORDERED.

---

**6.** According to the Declaration of Bernard Insel, Belgian law gave the Owner the opportunity to contest the arrest by making an application to the Court which had issued the Order. Declaration of Bernard Insel, Exhibit "E" to DeOrchis Aff., at ¶ 6.

**7.** Since Clauses 56 and 60 of the Charter Party specifically provided for the speed of the vessel under certain weather conditions, Charterer's claims for delay and underperformance arise under the Charter Party.