MAY SHIP REPAIR CONTRACTING
CORPORATION, Plaintiff,

v.

BARGE COLUMBIA NEW YORK, her
boilers, tackle, machinery and other
appurtenances in rem, Glanville Revo-
cable Trust and Columbia Coastal
Transport, Inc., in personam, Defen-
dants.

No. 97 Civ. 3264(LMM).

United States District Court,
S.D. New York.

April 6, 2001.

Richard M. Fricke, Fricke & Solomon, P.C., Staten Island, NY, for Plaintiff.

David H. Fromm, Fred G. Wexler, Brown, Gavalas & Fromm LLP, New York City for Defendants.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

In this action, Plaintiff May Ship Repair Contracting Corporation ("May Ship") seeks to recover fees and charges related to the repair and wharfage of Barge Columbia New York (the "Barge" or the "Columbia New York") at May Ship's facilities in Staten Island, New York. At the time in question, the Barge was owned by Defendant Glanville Revocable Trust (the "Trust") and was under charter to Defendant Columbia Coastal Transport, Inc. ("CCT"). May Ship has moved for summary judgment and, on the basis of language in Defendants' opposition brief, Rule 11 sanctions. For the following reasons, both motions are denied.

### BACKGROUND

In 1995, the Trust entered into a Bare Boat Charter with CCT (the "Charter"). This Charter was to continue for one year, with the option to renew. Pursuant to the Charter, CCT was to make all necessary repairs to return the Barge "in class." In October 1996, the Barge was brought to May Ship by CCT for routine maintenance and inspection. At this time, CCT and May Ship entered into an oral agreement whereby May Ship would dry-dock the Columbia New York. CCT agreed to pay all prices in connection with the dry-docking and inspection of the Barge on a fixed price basis. These terms were negotiated by James L. Greco ("Greco"), as agent for and on behalf of CCT, and Mohammed Helmy ("Helmy"), on behalf of May Ship. In a separate agreement, the Trust contracted May Ship to install zinc anodes and perform gaugings on the Barge. This agreement was negotiated between Donald C. Glanville ("Glanville"), trustee of the Trust, and Mohammed Adam ("Adam"), president and major shareholder of May Ship.

While the Barge was dry-docked, surveys were performed by the American Bureau of Shipping ("ABS") and the United States Coast Guard. These surveys re-

vealed that additional work was required in order to keep the vessel "in class." Following these surveys, May Ship began to make various repairs to the Barge, including work deemed necessary as a result of these surveys. CCT ultimately stopped working on the Barge in late October, 1996. On October 31, 1996, May Ship delivered its invoice to Greco for the work performed on the Columbia New York, totaling $157,106. To date, May Ship has received $50,000 from CCT and approximately $7,065 from the Trust.

In late October, 1996, a dispute arose between the Trust and CCT as to which party was financially responsible for the work required by the ABS and the Coast Guard. As per the Charter, this dispute was eventually resolved through arbitration. The arbitration decision, dated March 17, 1997, and annexed to papers submitted for purposes of deciding this summary judgment motion, awarded to the Trust the sum of $36,228.74. This amount was paid to the Trust by CCT.

From the time May Ship stopped working on the Columbia New York, until April 1997, the Columbia New York remained at May Ship's facilities. No agreement was reached between any of the parties regarding wharfage charges for this period. On March 6, 1997, however, May Ship presented CCT with an invoice for wharfage fees, at the rate of $500 per day, totaling $79,500. On April 28, 1997, a final invoice for wharfage was sent to the Trust, reciting total charges of $97,500. No payments were made on this invoice.

May Ship commenced this action shortly thereafter. Columbia New York and the Trust filed an Answer with Counterclaim denying all material allegations and alleging that May Ship wrongfully, maliciously, negligently and in bad faith detained the Columbia New York in its Staten Island shipyard. CCT served its Answer, denying all material allegations.[1] On November 3, 1999 May Ship moved for summary judgment.

A Rule 56(d) hearing was held before me on October 17, 2000. At issue was Defendants' allegation that May Ship's claim for wharfage fees amounted to extortion. Defendants appeared in court unprepared to present testimony supporting their allegation and were therefore unable to prove extortion. I then suggested that May Ship move for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Defendants' Rule 11 motion was filed in November, 2000.

**LEGAL STANDARD**

Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In short, summary judgment is to be granted only if no reasonable trier of fact could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In a motion for summary judgment, the movant bears the burden of showing that there are no genuine issues of material fact. *See Celotex*, 477 U.S. at 323, 106

---

1. CCT's Answer originally included a cross-claim against the Trust, but this cross-claim was later dismissed by stipulation. Pursuant to an indemnification agreement between the Trust and CCT, the Trust agreed to accept the defense of and indemnify CCT in this action. Counsel for the Barge and the Trust was subsequently substituted as counsel of record for CCT.

S.Ct. 2548. Once the moving party has satisfied this requirement, the burden shifts to the non-moving party to provide support as to why genuine triable issues remain. *See Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. The court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam*).

It is a well accepted principle that "[c]onclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## DISCUSSION

### 1. *Motion for Summary Judgment*

May Ship's motion for summary judgment is founded on two arguments. The first argument is that May Ship and CCT entered into a binding oral contract for repair services to be performed at fixed prices. May Ship contends that there are no questions of fact with respect to the repairs agreed upon under this contract. May Ship argues that it is therefore entitled to judgment as a matter of law, and CCT is obligated to make the remaining payments. May Ship's second argument is that Defendants are precluded from disputing the amount charged for repairs and wharfage on the Columbia New York, pursuant to the arbitrator's decision of April 4, 1997.

### a. Oral Contract between May Ship and CCT

▮▮▮ May Ship points out that under maritime law, a binding oral contract is created when the parties reach agreement on all material terms of a contract and clearly express their intention to be bound by those terms. *See Orient Mid–East Lines v. Albert E. Bowen, Inc.,* 458 F.2d 572 (2d Cir.1972). In September 1996, CCT brought the Barge to May Ship for dry-docking and routine maintenance in preparation for returning the Barge to the Trust. May Ship argues that CCT entered into a binding oral contract with Plaintiff for services to be performed on the Barge. Therefore, May Ship argues, CCT is obligated to make payment to May Ship in the amount listed on the invoice, less any payments made in advance. According to May Ship, the evidence clearly supports the finding of a binding oral contract.

In or around September 1996, CCT, through its agent, Greco, entered into a contract with May Ship for dry-dockage. This fact is undisputed by the parties. As part of this contract, Greco agreed to the dry-dock price as well as prices for several repairs necessary prior to returning the Barge to the Trust, all on a fixed price basis.[2] An invoice dated October 31, 1996,

---

2. In a deposition taken on April 23, 1999, Greco testified that he and Helmy, on behalf of CCT and May Ship respectively, agreed upon the following items on a fixed price basis:
   - drydocking ($2,500)
   - blocks ($1,200)
   - lay days ($12,375)
   - scraping the bottom ($1,920)
   - open and drain tanks for ABS (12″ inserts) ea. ($7,680)
   - drain skeg port and starboard ($640)
   - mock out two tanks (ABS) # 5 & # 6 STB ($28,800)
   - clean all water and debris from bottom of tank # 6 center (ABS) ($2,540)

   The notation "ABS" refers to those repairs required to bring the Barge "in class" pursu-

prepared by May Ship, indicated those agreed upon repairs and additional repairs to be made to the Columbia New York. The total on this invoice was $157,106. In his deposition, Greco testified to agreeing to only 8 of the 27 repairs listed on May Ship's invoice. This testimony conflicts with that given by representatives of May Ship as to what repairs were requested by CCT and what prices were agreed upon. Clearly these questions are material to the litigation, and cannot therefore be resolved at this stage. Evidence on this issue must be presented at trial and weighed by a finder of fact.

The repairs agreed upon by Greco and May Ship totaled $57,655. To date, CCT has made a payment of $50,000 to May Ship. It is not clear whether this payment was intended to be payment in full for those repairs authorized by Greco, or was merely a down payment of some sort. In deciding a motion for summary judgment, the judge's function is not himself to weigh evidence presented but to determine whether there is a genuine issue for trial. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 (1986). I cannot, therefore, make a finding of fact as to the purpose of this payment.

According to Glanville, the repairs specifically requested under a separate agreement also appear on the October 31 invoice.[3] Copies of canceled checks submitted by Defendant confirm that payment for some of these repairs was accepted by May Ship. There is conflicting testimony, however, as to the corresponding repairs for those payments.[4]

Evidence presented at trial is the only means by which the terms of this oral contract can be identified. There are substantial questions of material fact with regard to the terms of the agreements between all parties, and summary judgment is therefore inappropriate in this instance.

### b. Non–Mutual Offensive Collateral Estoppel

■ From October 1996, when all work on the Barge ceased, until April 1997, the Columbia New York remained at the May Ship facility in Staten Island. This fact is undisputed. There is no testimony, however, that wharfage fees were agreed to at any time when the Barge was at May Ship's facilities. Nevertheless, May Ship submitted several invoices to Defendants for wharfage fees incurred during this period. While it is conceded that May Ship does not normally charge wharfage, there

---

ant to the ABS Survey. (Greco Dep. at 18–32.)

3. In a deposition taken on February 11, 1999, when presented with a copy of the October 31 invoice, Glanville stated that he "might be responsible for" the following items:

- c & r bottom plate in # 5 port ($15,708)
- c & r one bottom long in # 5 port ($385)
- c & r one bulkhead bracket in # 5 port ($185)
- install 35 o/f zincs ($1,280)
- install 3 extra zincs ($225)
- audio gauge readings ($15,000)

4. At deposition, Glanville testified that a "check Number 601 in the amount of $5,560

was for payment in full for 1,390 gaugings on the Columbia New York.... And check number 602 in the amount of $1,505 was for the payment for installing 32 zinc anodes and furnishing and installing 3 zinc anodes on the Columbia New York...." (Glanville Dep. at 45.)

When asked at deposition about these payments, Adam responded, "Mr. Glanville agreed to do ABS on the dry docks, ABS belt on the dry dock, take the gauging of the hull from outside. The price we put in the job the gauging we took in the job turn out to be different than what Mr. Glanville ordered. It was not the job he ordered. He went to pay for a job he did not order." (Adam Dep. at 136.)

is conflicting testimony regarding May Ship's statements that wharfage would, in fact, not be charged. In response to May Ship's claim for wharfage fees, Defendants argue that no notice was given that such charges would accrue. Moreover, Defendants consider the rate of $500 per day which underlies these fees, to be unreasonable.

In support of its motion for summary judgment, May Ship argues that the Trust is "precluded under the doctrine of collateral estoppel from claiming that its acquired responsibilities to Plaintiff, for CCT's obligations, are subject to any argument of excessiveness. It is also precluded under the same principles from trying to recast CCT's obligations to May from a 'fixed price' basis to a time, labor and material/quantum meruit basis." (Pl.'s Mem. Supp. Summ. J. at 11.)

■ Under the doctrine of non-mutual offensive collateral estoppel, a plaintiff can foreclose the defendant from litigating an issue which the defendant has previously litigated unsuccessfully in another action with another party. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329–31, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Collateral estoppel is appropriate where "(1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits.'" *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir.1997) (quoting *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir.1995)). The party asserting collateral estoppel bears the burden of demonstrating that it is entitled to this relief. *See In re Sokol*, 113 F.3d 303, 306 (2d Cir.1997) (looking to

New York law and stating that the party seeking to invoke collateral estoppel bears the burden of establishing the identity of issues between the prior and present issues and the necessity of their having been decided).

■ While arbitration decisions have been found to have preclusive effect on later litigation, *see Warth Line, Ltd. v. Merinda Marine Co.*, 778 F.Supp. 158, 162 (S.D.N.Y.1991), the arbitration in the instant case did not deal with the identical issue that is raised in this litigation. May Ship argues that there is no need for the reasonableness of its fees to be reviewed by this court, as the arbitration decision of April 4, 1997 determined them to be reasonable. May Ship, however, has shown no basis for this contention. The arbitration entered into between the Trust and CCT dealt with financial responsibility for the repairs required pursuant to the ABS survey, and further financial responsibilities under the Charter. This arbitration did not decide whether CCT or the Trust agreed to all the charges presented on the October 31 invoice, nor whether those charges were reasonable. Rather, the arbitration award directed CCT to pay the Trust the sum of $36,228.74 for repairs, repairs not yet made and Charter Hire.

May Ship focuses on the fact that the arbitrator used the amounts listed in May Ship's invoices to formulate some of the arbitration award as an argument that the arbitrator found May Ship's prices reasonable. The issue of reasonableness, however, was never actually litigated in the arbitration. As May Ship has not satisfied its burden of showing those elements required for issue preclusion, the arbitration decision of April 4, 1997 has no preclusive effect on this action. Genuine issues of material fact remain to be tried, and summary judgment is therefore inappropriate on this ground as well.

### 2. *Motion for Rule 11 Sanctions*

█ The parties appeared before me for a pre-trial conference on October 6, 2000. At that time, I advised the parties that I had reviewed the fully briefed summary judgment motion and was troubled by the Defendants' assertion that May Ship's claim for wharfage fees amounted to extortion.[5] I ordered the parties to return to court on October 17, 2000 for a hearing in which the Defendants would bear the burden of establishing extortion. I also inquired as to the anticipated length of trial, instructing the parties to assume for purposes of answering the question, that summary judgment was denied. Following the October 6 conference, additional conversations were held between my chambers and the parties, out of which arose significant confusion as to the purpose of the hearing scheduled for October 17, 2000. At the October 17 court appearance, Brown, Gavalas & Fromm LLP ("BGF"), counsel for the Defendants, was unprepared to prove extortion. Following this hearing, and at my suggestion, May Ship moved for Rule 11 sanctions.

█ Rule 11 of the Federal Rules of Civil Procedure provides, in pertinent part:

The signature of an attorney ... constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law ... and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11(a). For purposes of Rule 11, an argument constitutes a frivolous legal position if, under an "objective standard of reasonableness," it is "clear ... that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Derechin v. State University of New York,* 963 F.2d 513, 516 (2d Cir.1992).

BGF's characterization of May Ship's conduct as extortionate behavior is certainly improper, but does not amount to a frivolous legal argument as required to impose Rule 11 sanctions. BGF engaged in hyperbole, itself unwelcome in legal memoranda, but did not allege that May Ship's wharfage fees are an actual attempt to extort money from Defendants. It should be noted, however, that in their efforts to convince me that their use of the word "extortion" was innocuous, and therefore permissible, BGF points to one definition of the word.[6] Counsel again engages in mis-characterization by citing only to the third meaning of the word. The first two meanings associated with "extortion"

---

5. The word "extortion" appears five times in various forms throughout Defendants' Memorandum in Opposition to Summary Judgment:
   • "This action arises out of a claim by May Ship to extort from defendants excessive and unreasonable fees and charges related to the repair and alleged wharfage...." (Defs.' Mem. Opp. Summ J. at 1.)
   • "May Ship seeks to preclude defendants from litigating the reasonableness of May Ship's excessive repair prices and extortionist wharfage fees...." (*Id.* at 2.)
   • "Glanville should be held responsible only for the industry standard prices of such repairs, less Glanville's cost to defend against May Ship's attempt to extort unreasonable fees." (*Id.* at 10.)
   • "plaintiff is simply attempting to extort an inordinate amount of money from the defendants." (*Id.* at 14.)
   • "It is clear, that plaintiff is simply attempting to extort money from the defendants." (*Id.* at 15.)

6. Adding emphasis, BGF cites Webster's II, New Riverside University Dictionary and defines "extortion" as, *"An exorbitant charge."*

do, in fact, convey a sense of illegality.[7] These meanings would support an interpretation of "extortion" as a legal claim. As such, this legal claim would not be grounded in fact, and would support the imposition of Rule 11 sanctions. Nevertheless, imposition of sanctions under Rule 11 are within the court's discretion, and given the totality of the circumstances, I do not feel they are warranted at this time.

It is clear that the confusion emanating from the October 6, 2000 pre-trial conference, the subsequent court orders, and numerous telephone calls to chambers all account for BGF's performance at the October 17 hearing. While I do not find that Rule 11 sanctions are appropriate in this instance, I impress upon BGF the importance and power of language in the legal profession. Words are an attorney's most valuable and effective tools, and must be wielded with skill and care.

## CONCLUSION

For the reasons discussed above, May Ship's motion for summary judgment is denied. May Ship's Rule 11 motion is also denied. It is hereby ordered that this case be marked ready for trial.

**SO ORDERED.**

---

**7.** "1. The Act or an instance of extorting. 2. Illegal use of one's official position or powers to obtain property, funds, or patronage." Webster's II, New Riverside University Dictionary, at 457.