[No. B115350. Second Dist., Div. Five. Nov. 20, 1998.]

HOWARD SIEGEL, Plaintiff and Respondent, v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA et al.,
Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the indicated portions of part III.H-K.

**COUNSEL**

Morgan, Lewis & Bockius, Joseph E. Herman and John S. Battenfeld for Defendants and Appellants.

Ball & Yorke, Allen R. Ball and Esther R. Sorkin for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Defendants, the Prudential Insurance Company of America (Prudential) and James Dinges, appeal from a judgment denying their petition to vacate an arbitration award. Additionally, they appeal from a judgment confirming the award in favor of plaintiff, Howard Siegel. Defendants argue that the manifest disregard for the law standard of review of the merits of an arbitration award must be applied to this case because California's rule, which prohibits such, is preempted by the provisions of 9 United States Code sections 10 and 12[1] of the United States Arbitration Act (USAA). In the published portion of this opinion, we reject defendants' contention that section 10 of the USAA preempts California's rule precluding judicial review of the merits of an arbitrator's[2] award. We conclude the present effort to vacate the award is subject to judicial review pursuant to California's arbitration statute, Code of Civil Procedure section 1286.2.

## II. BACKGROUND

On December 10, 1993, plaintiff filed a wrongful termination action against defendants in the superior court. The complaint alleged causes of

[1]Unless otherwise indicated, all future references to a section are to the provisions of title 9 of the United States Code.

[2]Throughout this opinion we will refer to an award made by an individual arbitrator. In this and many other cases, the award is the result of a decision by a panel of arbitrators. For purposes of clarity, we will refer to an award as if made by an individual arbitrator. However, our comments apply equally to decisions rendered by a panel of arbitrators.

action for: wrongful termination; breach of the implied contract of continued employment; breach of the implied covenant of good faith and fair dealing; defamation; breach of written contract; and negligent infliction of emotional distress. On March 4, 1994, the trial court granted defendants' petition to compel arbitration and stayed further judicial proceedings. The order was based on a written agreement between the parties that disputes arising from the plaintiff's employment with defendants would be subject to arbitration before the National Association of Securities Dealers, Inc. (NASD).

The arbitration hearing began on May 29, 1996, before three arbitrators, Jean Elliott, Jeffrey Skogsbergh, and Larry Edmonson, on claims for wrongful termination and defamation. On December 11, 1996, after eight days of hearings, the parties were informed that Mr. Skogsbergh had withdrawn from the panel and had been replaced by Andrew Sorenson. On January 3, 1997, defendants requested that the arbitration hearing begin again. After hearing arguments, the arbitrators determined the case would not be started over but would proceed with the new arbitrator. At least 12 additional hearing dates occurred with the new panel.

Viewing the record in a light most favorable to the judgment below, as we must (*Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1087 [4 Cal.Rptr.2d 874, 824 P.2d 680]; *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 938 [160 Cal.Rptr. 141, 603 P.2d 58]), the following facts were established at the arbitration. Plaintiff originally began working for Prudential in 1975 as an agent. He was promoted to sales manager before he was terminated in 1983. Prudential rehired him as a sales manager in 1988. Plaintiff was supervised by Gary Budish, Mr. Dinges, and then James Novack. As previously noted, Mr. Dinges is a named defendant in the present litigation. During his employment as a sales manager, plaintiff received many citations and commendations.

In May 1990, Mr. Budish, who was then the district manager, conducted a class to teach managers and agents how to "churn" policies. "Churning" is a tactic to encourage policyholders to borrow against the cash value of existing policies in order to purchase newer and more expensive ones. The original policy eventually collapses under the loans taken against it. Then the policyholder is left with either a more expensive policy or no coverage at all. One of the employees taped a churning class taught by Mr. Budish. The taping, which occurred in a room full of agents and managers, occurred without Mr. Budish's consent.

In September 1990, Mr. Dinges sent an associate, John Martin, to tell plaintiff how to make more money in bonuses from investments in mutual

funds. This would be accomplished by dividing the investment between many funds without the client's knowledge. This would deprive the client of volume discounts and cost him or her more money in sales charges. This practice would, however increase the money payable to the selling agent and bonuses due to management. Plaintiff spoke to Mr. Dinges about Mr. Martin's advice. Plaintiff stated he considered the plan unethical and that he would not allow his sales staff to participate in it.

In January 1991, plaintiff was promoted to district manager. Plaintiff's sales unit became one of the top producing units in the country. In March 1991, plaintiff reported the churning class to his supervisors, Mr. Dinges and Mr. Novack. However, Mr. Dinges praised agents for churning activities.

In April 1991, plaintiff submitted a request for reimbursement of airfare that was improper because it contained an incorrect amount. A meeting with Mr. Dinges, Mr. Novack, and plaintiff was held. After the meeting, plaintiff was placed on six months' probation. However, in June 1991, Mr. Dinges unilaterally altered the probation to be open-ended. Karen Notarainni, a Prudential employee, testified that "open-ended probation" was for agents and specific probation terms for district managers were determined by the vice-president of regional marketing.

Plaintiff presented evidence defendants: publicly praised one employee known, as the "doctor," for his ability to remove cash values from policies; promoted Mr. Budish to vice-president; this promotion occurred after plaintiff reported that Mr. Budish forged a policyholder's signature to an order increasing coverage from $1 to $2 million; determined the forgery was merely one "of convenience"; sponsored seminars on selling life insurance policies to elderly people by misleading them into believing that certain benefits could be used to finance long-term care, when, in fact, the benefits could only be used for short-term care; and used computer software to generate printouts containing inaccurate and misleading information which were shown to clients. These practices led plaintiff to complain to his supervisors. In the spring of 1992, after reporting violations to Mr. Novack, plaintiff's office was audited due to alleged irregularities in monies advanced to agents. The audit found that plaintiff's "office systems of internal controls are satisfactory to maintain processing integrity[] [a]nd the office is in general compliance with company procedures." Plaintiff was discharged in September 17, 1993, four days after making a report to the ethics hotline.

On May 13, 1997, the arbitrators issued their decision. They unanimously determined that defendants were jointly and severally liable to plaintiff for $113,016 in actual damages and for $225,000 in general damages. The

arbitrators also determined Prudential was liable to plaintiff for $1 million in punitive damages for acting with oppression, fraud, and malice in discharging plaintiff for reporting wrongdoing by its employees.

On June 13, 1997, plaintiff filed a petition to confirm the arbitration award. Defendants opposed the petition to confirm the award. Defendants filed a petition to vacate the award. Defendants sought to vacate the award on the grounds: (1) the arbitrators exceeded their authority because only two of the three arbitrators who decided the case heard all the evidence presented by the parties; (2) the arbitrators disregarded the law and violated public policy by allowing a tape recording into evidence which was secretly recorded in violation of Penal Code section 632; (3) the arbitrators acted in "manifest disregard of the law" by awarding emotional distress damages without evidence that plaintiff suffered severe mental injury; and (4) the arbitrators acted in "manifest disregard of [the] law" by awarding $1 million in punitive damages without any evidence to support such an award.

The trial court held a hearing on July 18, 1997. The trial court initially indicated that it intended to deny plaintiff's petition to confirm the award. Further, the trial court indicated a tentative intent to grant defendants' petition to vacate the award. Eventually though, the trial court granted the petition to confirm the arbitration award. Also, the trial court denied the petition to vacate the award. Defendants filed a timely notice of appeal from the judgment.

## III. DISCUSSION

### A. *Overview of the Grounds for Vacating an Arbitration Award*

The arbitration clause contained in the agreement between plaintiff and Prudential involves "commerce" and is governed by the USAA. (*Gilmer* v. *Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 24-25 [111 S.Ct. 1647, 1651-1652, 114 L.Ed.2d 26]; *Rosenthal* v. *Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 405 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) As will be noted in greater depth later, the purpose and effect of the USAA is to encourage the arbitration of civil disputes outside the judicial forum. (*Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [103 S.Ct. 927, 941, 74 L.Ed.2d 765]; *Rosenthal* v. *Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 405.) The USAA is predicated on Congress's authority to enact substantive rules under the commerce clause. (*Allied-Bruce Terminix Cos.* v. *Dobson* (1995) 513 U.S. 265, 271 [115 S.Ct. 834, 838, 130 L.Ed.2d 753]; *Perry* v. *Thomas* (1987) 482 U.S. 483, 489 [107 S.Ct. 2520, 2525, 96 L.Ed.2d 426]; *Southland Corp.* v. *Keating* (1984) 465

U.S. 1, 11 [104 S.Ct. 852, 858-859, 79 L.Ed.2d 1].) The USAA " 'creates a body of federal substantive law' " requiring that arbitration agreements be honored. (*Southland Corp.* v. *Keating, supra,* 465 U.S. at pp. 12, 15, fn. 9 [104 S.Ct. at pp. 859, 861]; accord, *Mitsubishi Motors* v. *Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 626 [105 S.Ct. 3346, 3353-3354, 87 L.Ed.2d 444].) That federal substantive law is applicable in both state and federal courts. (*Allied-Bruce Terminix Cos.* v. *Dobson, supra,* 513 U.S. at pp. 271-272 [115 S.Ct. at p. 838]; *Perry* v. *Thomas, supra,* 482 U.S. at p. 489 [107 S.Ct. at p. 2525]; *Southland Corp.* v. *Keating, supra,* 465 U.S. at p. 12 [104 S.Ct. at p. 859].)

At issue in this case is defendants' claim that sections 10 and 12 of the USAA allow the merits of an award to be reviewed when there has been a manifest disregard of the law by an arbitrator. In the past, California courts have suggested in dicta there may be a relationship between sections 10 and 12 and the manifest disregard of the law rule and its application to this decision by this state's trial judges in reviewing the merits of arbitration awards. (See *Greenfield* v. *Mosley* (1988) 201 Cal.App.3d 735, 743-744 & fns. 14, 15 [247 Cal.Rptr. 314]; *National Football League Players' Assn.* v. *National Football League Management Council* (1986) 188 Cal.App.3d 192, 198-199 [233 Cal.Rptr. 147]; *Evans Products Co.* v. *Millmen's Union No. 550* (1984) 159 Cal.App.3d 815, 819 [205 Cal.Rptr. 731].) Other state courts have suggested that section 10 permits a state court to review the merits of an award for a manifest disregard of the law by an arbitrator. (See *Edward D. Jones & Co.* v. *Schwartz* (Mo.Ct.App. 1998) 969 S.W.2d 788, 795; *Greenway Capital Corp.* v. *Schneider* (1997) 229 Ga.App. 485 [494 S.E.2d 287, 288-289].)

Section 10 of the USAA does not explicitly state that an award may be set aside because the merits result from a manifest disregard of the law by an arbitrator. Section 10 of the USAA, which sets forth the statutory grounds for vacating an award, provides in part: "(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration— [¶] (1) Where the award was procured by corruption, fraud, or undue means. [¶] (2) Where there was evident partiality or corruption in the arbitrators, or either of them. [¶] (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced. [¶] (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject

matter submitted was not made. . . ."[3] Section 12 of the USAA prescribes the procedure whereby a motion to vacate is presented to a court for decision. Section 12 states in relevant part: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court. . . ."

## B. *The Judicial Analysis Which Allows for Review of the Merits of an Award for a Manifest Disregard of the Law*

■ Defendants contend that the merits of an arbitration award may be reviewed for a manifest disregard of the law under sections 10 and 12 of the USAA. In the past, there was some question among the federal courts as to the existence of the propriety of judicial on the merits review of an award for a manifest disregard of the law. The manifest disregard of the law ground has its genesis in dictum in the decision of *Wilko* v. *Swan* (1953) 346 U.S. 427, 436-437 [74 S.Ct. 182, 187, 98 L.Ed. 168], overruled on another point in *Rodriguez de Quijas* v. *Shearson/Am. Exp.* (1989) 490 U.S. 477, 479 [109 S.Ct. 1917, 1919, 104 L.Ed.2d 526]. *Wilko* directly addressed the question of whether arbitration was barred under the Securities Act of 1933. The dictum appeared in *Wilko* as follows during a discussion of the limited right to review by the federal courts of an arbitration award: "While it may be true, as the Court of Appeals thought, that a failure of the arbitrators to decide in accordance with the provisions of the Securities Act would 'constitute

---

[3]California's Arbitration Act (Code Civ. Proc., § 1280 et seq.) contains a similar provisions for vacating as follows which states: "Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following: [¶] (a) The award was procured by corruption, fraud or other undue means. [¶] (b) There was corruption in any of the arbitrators. [¶] (c) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (e) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title. [¶] (f) An arbitrator making the award was subject to disqualification upon grounds specified in Section 1281.9, but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives." (Code Civ. Proc., § 1286.2.)

grounds for vacating the award pursuant to section 10 of the Federal Arbitration Act,' that failure would need to be made clearly to appear. In unrestricted submission, such as the present margin agreements envisage, the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation." (346 U.S. at pp. 436-437 [74 S.Ct. at p. 187], fn. omitted.)

Various circuit courts of appeals then picked up on this rather oblique obiter dictum and articulated a rule that allowed for a limited right to review of the merits of an arbitration award for a manifest disregard of the law. (E.g., *S.D. Warren Co.* v. *United Paperworkers Int. Union* (1st Cir. 1987) 815 F.2d 178, 186-187, judg. vacated on other grounds and cause remanded (1987) 484 U.S. 983 [108 S.Ct. 497, 98 L.Ed.2d 496]; *Amicizia Societa Nav.* v. *Chilean Nitrate & Iodine S. Corp.* (2d Cir. 1960) 274 F.2d 805, 808; *Ludwig Honold Mfg. Co.* v. *Fletcher* (3d Cir. 1969) 405 F.2d 1123, 1127; *Upshur Coals Corp.* v. *UMWA, Dist. 31* (4th Cir. 1991) 933 F.2d 225, 229; *Anaconda Co.* v. *Dist. Lodge No. 27 of Intern. Ass'n* (6th Cir. 1982) 693 F.2d 35, 37; *Stroh Container Co.* v. *Delphi Industries, Inc.* (8th Cir. 1986) 783 F.2d 743, 749; *San Martine Compania De Nav.* v. *Saguenay Term. Ltd.* (9th Cir. 1961) 293 F.2d 796, 801; *Jenkins* v. *Prudential-Bache Securities, Inc.* (10th Cir. 1988) 847 F.2d 631, 634; *Sargent* v. *Paine Webber Jackson & Curtis, Inc.* (D.C. Cir. 1989) 882 F.2d 529, 532 [280 App.D.C. 7]; cf. *R.M. Perez & Associates, Inc.* v. *Welch* (5th Cir. 1992) 960 F.2d 534, 539 [declining to adopt the manifest disregard of the law standard]; *Health Services Management Corp.* v. *Hughes* (7th Cir. 1992) 975 F.2d 1253, 1267 [while rejecting the "manifest disregard of the law" standard of review, permitting award to be set aside if a majority of arbitrators deliberately disregarded what they knew to be the law in order to reach the result they did]; *Robbins* v. *Day* (11th Cir. 1992) 954 F.2d 679, 684 [refusing to adopt "manifest disregard of the law" standard of judicial review].)

In 1995, the United States Supreme Court spoke with clarity on the subject of on the merits review of an arbitration award for a manifest disregard of the law and held: "Although the question is a narrow one, it has a certain practical importance. That is because a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute (say, as here, its obligation under a contract). But, where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value. The party still can ask a court to review the arbitrator's decision, but the court will set that decision aside only in very unusual circumstances. See, e.g., 9 U.S.C. § 10 (award procured by corruption, fraud, or undue means; arbitrator exceeded his powers); *Wilko* v. *Swan*, 346 U.S. 427, 436-437 (1953) . . . (parties bound by arbitrator's decision not in

'manifest disregard' of the law) . . . . Hence, who—court or arbitrator—has the primary authority to decide whether a party has agreed to arbitrate can make a critical difference to a party resisting arbitration." (*First Options of Chicago, Inc.* v. *Kaplan* (1995) 514 U.S. 938, 942 [115 S.Ct. 1920, 1923, 131 L.Ed.2d 985].) After the *First Options* case was decided, the Eleventh Circuit, which had declined to adopt the manifest disregard of the law test, began to apply this standard of review to the merits of an arbitration award. (*Scott* v. *Prudential Securities, Inc.* (11th Cir. 1998) 141 F.3d 1007, 1017.) To date, the Seventh Circuit has not addressed the issue in a citable published opinion, although it has been mentioned in dicta. (See *Lander Co., Inc.* v. *MMP Investments, Inc.* (7th Cir. 1997) 107 F.3d 476, 480; *Flexible Mfg. Systems Pty.* v. *Super Products* (7th Cir. 1996) 86 F.3d 96, 98.) The issue has not been addressed at all to date in the Fifth Circuit after *First Options* was decided.

The problem though is that the foregoing decisional authority applying the manifest disregard of the law rule to review of the merits of an arbitration award has arisen in the context of litigation in the *federal* courts. The foregoing authority has never addressed the issue of whether sections 10 and 12 of the USAA or the manifest disregard of the law test applies when postarbitration litigation which raises issues concerning the merits of the award is filed in state court. It is established California law that under this state's arbitration act (Code Civ. Proc., § 1280 et seq.) the merits of an arbitration award are not subject to judicial review. (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899] ["[A] court may not review the sufficiency of the evidence supporting an arbitrator's award."]; *Morris* v. *Zuckerman* (1968) 69 Cal.2d 686, 691 [72 Cal.Rptr. 880, 446 P.2d 1000] [" 'Neither the merits of the controversy . . . nor the sufficiency of the evidence to support the arbitrator's award are matters for judicial review.' "]; *O'Malley* v. *Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 111-112 [308 P.2d 9] ["The merits of the controversy between the parties are not subject to judicial review [citations]."]; 3 Cal. Law Revision Com. Rep. (Sept. 1961) p. G-53 ["Numerous court rulings have . . . developed the following basic principles which set the limits for any court review: [¶] . . . [¶] . . . Merits of an arbitration award either on questions of fact or of law may not be reviewed except as provided for in the statute in the absence of some limiting clause in the arbitration agreement." (Fns. omitted.)].) Further, an erroneous decision in an arbitration is not an act in excess of the arbitrator's powers within the meaning of the California Arbitration Act. (*Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th at p. 28 ["It is well settled that 'arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' "]; *O'Malley* v. *Petroleum Maintenance Co., supra,* 48 Cal.2d at p. 111 [same]; 3 Cal. Law

Revision Com. Rep., *supra*, p. G-55 ["[A]rbitrators do not exceed their powers because of an erroneous reason for their decision, or because their reasoning is unsound . . . ." (Fns. omitted.)].)

Defendants argue that sections 10 and 12 of the USAA, which they argue includes the manifest disregard of the law test, apply to postaward litigation that raises issues concerning the merits in state court. More specifically, defendants argue that both California appellate courts and trial judges have the authority to determine whether the arbitrator manifestly disregarded the law in reaching the merits of a dispute in arbitration. Defendants reason that the California rule under this state's arbitration law, which precludes on the merits review of an award, is preempted by the USAA. In resolving the scope of preemption and potential application of the manifest disregard of the law test under the USAA, we examine: the preemption analysis set forth in *Rosenthal* v. *Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at pages 407-410; United States Supreme Court analysis of the limited preemptive effect of the USAA; the legislative history of the USAA; and the nonstatutory basis of the manifest disregard of the law rule. Analysis of these matters lead us to the conclusion no preemption of California's rule precluding resolution of the merits of an award has occurred because of the USAA.

C. *The Rosenthal Preemption Analysis Applied to the Procedural Jury Trial Requirement Imposed by the USAA*

The California Supreme Court addressed the issue of whether a procedural portion of the USAA applied to state court litigation in *Rosenthal* v. *Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at pages 407-410. In *Rosenthal*, the California Supreme Court determined the jury trial right in section 4[4] of the USAA did not apply to prearbitration state court litigation. The Supreme Court focused on two issues in determining the preemptive

---

[4]Section 12 of the USAA prescribes the procedure whereby a motion to vacate is presented to a court for decision. Section 4 of the act provides: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no

effect of section 4: the express language of section 4 (14 Cal.4th at pp. 407-408); and decisional authority concerning the preemptive effect of federal statutes. (*Id.* at pp. 408-409.) We will apply this two-part *Rosenthal* analysis to the question of whether sections 10 and 12 of the USAA are applicable to California litigation.

### 1. *Statutory Analysis*

First, the *Rosenthal* court looked to the express language of section 4. The *Rosenthal* court held: "Section 4 of the USAA does not explicitly govern the procedures to be used in state courts. As already noted, the statute contemplates a petition in 'United States district court,' and provides that certain steps are to be taken 'in the manner provided by the Federal Rules of Civil Procedure.' This language has led the United States Supreme Court to express its doubt that section 4 is applicable in state courts. Thus, in *Southland Corp.*, *supra*, 465 U.S. [at page] 16, footnote 10 . . . , the court explained: 'In holding that the Arbitration Act preempts a state law that withdraws the power to enforce arbitration agreements, we do not hold that [sections] 3 and 4 of the Arbitration Act apply to proceedings in state courts. Section 4, for example, provides that the Federal Rules of Civil Procedure apply in proceedings to compel arbitration. The Federal Rules do not apply in such state-court proceedings.' In *Volt Info. Sciences* v. *Leland Stanford Jr. U.* (1989) 489 U.S. 468, 477 . . . , the high court again declined to decide the issue, which it stated had been 'expressly reserv[ed]' in *Southland Corp.* The court remarked that sections 3 and 4 'by their terms appear to apply only to proceedings in federal court.' (*Volt Info. Sciences* v. *Leland Stanford Jr. U.*, *supra*, 489 U.S. at p. 477, fn. 6 . . . .)" (*Rosenthal* v. *Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at pp. 407-408.) Like section 4, section 10 by its very terms applies only in federal court. Section 10(a) states in pertinent part: "In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . ." This statutory language weighs materially against the application of sections 10 and 12 to a forum other than the United States District Court of the district

jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."

in which the award was made. Moreover, the USAA provides a specific procedure for service of an application to set aside an arbitration award. As noted previously, section 12 states in relevant part concerning service of the petition to vacate an award: "If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court." The section 12 references to the "district" and the "marshal of any district" when construed with section 10 are consistent with application to the federal rather than state courts. However, in *Rosenthal*, the Supreme Court held that the mere fact the language concerning the jury trial right under the USAA referred to federal courts was not dispositive of the issue of its applicability to litigation in a nonfederal forum. (*Rosenthal* v. *Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at pp. 408-409.)

### 2. *Principles of Federal Preemption as Articulated in Rosenthal*

In addition to the statutory language, the *Rosenthal* court also looked to broad principles of federal preemption in determining the jury trial right adverted to in section 4 of the USAA did not apply to state court litigation concerning arbitration agreements. The *Rosenthal* court held and, because of its pertinence to the present case, we quote its analysis at length: "The question whether a jury trial is called for thus requires us to go beyond the language of section 4 of the USAA and apply broader principles of federal preemption. It is a 'general and unassailable proposition . . . that States may establish the rules of procedure governing litigation in their own courts,' even when the controversy is governed by substantive federal law. (*Felder* v. *Casey* (1988) 487 U.S. 131, 138 . . . .) 'By the same token, however, where state courts entertain a federally created cause of action, the "federal right cannot be defeated by the forms of local practice." ' (*Ibid.*) Thus, as we have previously recognized, a state procedural rule must give way 'if it impedes the uniform application of the federal statute essential to effectuate its purpose, even though the procedure would apply to similar actions arising under state law.' (*McCarroll* v. *L.A. County etc. Carpenters* (1957) 49 Cal.2d 45, 61, 62 . . . .) At a minimum the state procedure must be neutral as between state and federal law claims. (*Howlett* v. *Rose* (1990) 496 U.S. 356, 372 . . . .) More exactingly, the state rule may be preempted if it would stand ' " 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " ' (*Felder* v. *Casey*, *supra*, 487 U.S. at p. 138 . . . .) Uniform national application of a federal substantive law

requires, in particular, that state courts not apply procedural rules that would 'frequently and predictably produce different outcomes . . . based solely on whether the [federal] claim is asserted in state or federal court.' (*Ibid.*) [¶] Like other federal procedural rules, therefore, 'the procedural provisions of the [USAA] are not binding on state courts . . . *provided applicable state procedures do not defeat the rights granted by Congress.*' (*McClellan* v. *Barrath Constr. Co., Inc., supra*, 725 S.W.2d at p. 658, italics added.) We think it plain the California procedures for a summary determination of the petition to compel arbitration serve to further, rather than defeat, the enforceability policy of the USAA. Sections 1281.2 and 1290.2 are neutral as between state and federal law claims for enforcement of arbitration agreements. They display no hostility to arbitration as an alternative to litigation; to the contrary, the summary procedure provided, in which the existence and validity of the arbitration agreement is decided by the court in the manner of a motion, is designed to further the use of private arbitration as a means of resolving disputes more quickly and less expensively than through litigation. Finally, having a court, instead of a jury, decide whether an arbitration agreement exists will not 'frequently and predictably produce different outcomes.' (*Felder* v. *Casey, supra*, 487 U.S. at p. 138 . . . .) Because the California procedure for deciding motions to compel serves to further, rather than defeat, full and uniform effectuation of the federal law's objectives, the California law, rather than section 4 of the USAA, is to be followed in California courts." (*Rosenthal* v. *Great Western Fin. Securities Corp., supra*, 14 Cal.4th at pp. 408-410, fn. omitted.) Hence, the California Supreme Court held that the jury trial right in section 4 of the USAA did not apply in prearbitration state court litigation. Further, it was held California's rule allowing for the use of declarations or, in certain circumstances, live testimony before a judge to resolve contract formation questions was not preempted by the USAA. (14 Cal.4th at pp. 402, 409-410.)

The second aspect of the *Rosenthal* analysis is helpful in resolving the preemption issue as it relates to section 10 of the USAA. California's rule precluding on the merits review of an arbitration award does not stand as an obstacle to full effectuation of the purpose of the USAA—enforcement of arbitration agreements. Further, precluding on the merits judicial review for a manifest disregard of the law would not appear to frequently and predictably produce different outcomes. There is no verifiable statistical data or even anecdotal evidence that a materially significant number of awards are set aside by federal judges because of a manifest disregard of the law, which awards would have been upheld in state court litigation.[5] California's rule evidences no hostility towards arbitration. In fact, California's rule furthers

---

[5]We hesitate to speculate as to how often federal courts set aside arbitration awards on manifest disregard of the law grounds. However, the federal courts have described the

the use of arbitration by somewhat more strictly limiting judicial review of the merits of an award. California's rule against on the merits review furthers rather than defeats full effectuation of the federal law's objectives.

### D. United States Supreme Court Analysis of the Limited Preemptive Effect of the USAA

In addition to the analysis in *Rosenthal*, of special consequence is the extent to which the United States Supreme Court has identified the *limited* preemptive effect of the USAA. We examine the historical development over the past 15 years of the United States Supreme Court's analysis concerning the limited preemptive effect of the USAA. In *Moses H. Cone Hospital* v. *Mercury Constr. Corp.*, *supra*, 460 U.S. at page 24 [103 S.Ct. at page 941], the United States Supreme Court identified section 2[6] of the USAA as the primary substantive provision of the act as follows: "Section 2 is the primary substantive provision of the Act, declaring that a written agreement to arbitrate 'in any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2. Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." (Fn. omitted.) Later in *Southland Corp.* v. *Keating*, *supra*, 465 U.S. at page 16 [104 S.Ct. at page 861], the United States Supreme Court defined the preemptive scope of the USAA as follows, "In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." (Fns. omitted.) The Supreme Court further noted that it was not deciding that all of the USAA preempted state law. The Supreme Court noted: "The contention is made that the Court's interpretation of [section] 2 of the Act renders [sections] 3 and 4 'largely superfluous.' [Citation.] This misreads our holding and the Act. In holding that the Arbitration Act

---

manifest disregard of the law ground as: "very narrowly limited" (*Diapulse Corp. of America* v. *Carba, Ltd.* (2d Cir. 1980) 626 F.2d 1108, 1110) or " 'severely limited.' " (*Folkways Music Publishers, Inc.* v. *Weiss* (2d Cir. 1993) 989 F.2d 108, 112; *Office of Sup., Gov. of Rep. of Korea* v. *New York Nav. Co., Inc.* (2d Cir. 1972) 469 F.2d 377, 379.)

[6]Section 2 of the USAA states: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

preempts a state law that withdraws the power to enforce arbitration agreements, we do not hold that [sections] 3 and 4 of the Arbitration Act apply to proceedings in state courts. Section 4, for example, provides that the Federal Rules of Civil Procedure apply in proceedings to compel arbitration. The Federal Rules do not apply in such state-court proceedings." (*Id.* at p. 16, fn. 10 [104 S.Ct. at p. 861].)

In *Volt Info. Sciences* v. *Leland Stanford Jr. U.* (1989) 489 U.S. 468, 477-478 [109 S.Ct. 1248, 1254-1255, 103 L.Ed.2d 488], the United States Supreme Court expounded at some length on the limited preemptive effect of the USAA on state court litigation involving arbitration. The United States Supreme Court held: "The [USAA] contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. See *Bernhardt* v. *Polygraphic Co.*, 350 U.S. 198 [76 S.Ct. 273, 100 L.Ed. 199] (1956) (upholding application of state arbitration law to arbitration provision in contract not covered by the [USAA]). But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' *Hines* v. *Davidowitz*, 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581] (1941)." (*Id.* at p. 477 [109 S.Ct. at p. 1255].) The Supreme Court further identified the principal purpose for the USAA as follows: "The [USAA] was designed 'to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate,' *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U.S., at 219-220 [105 S.Ct. at pp. 1241-1242], and to place such agreements ' "upon the same footing as other contracts," ' *Scherk* v. *Alberto-Culver Co.*, 417 U.S., at 511 [945 S.Ct. at p. 2543] (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)). While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage 'was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered.' *Byrd*, 470 U.S., at 220 [105 S.Ct. at p. 1242]." (*Id.* at p. 478 [109 S.Ct. at p. 1255].) Later, in *Volt Info. Sciences*, the United States Supreme Court identified the parameters of the preemptive effect of the USAA as follows: "In recognition of Congress' principal purpose of ensuring that private arbitration agreements are enforced according to their terms, we have held that the [USAA] pre-empts state laws which 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' *Southland Corp.* v. *Keating*, 465 U.S. 1, 10 [104 S.Ct. 852, 858, 79 L.Ed.2d 1] (1984). See, e.g., *id.*, at 10-16 [104 S.Ct. at pp. 858-861] (finding pre-empted a state statute which rendered agreements to arbitrate certain franchise claims unenforceable); *Perry* v. *Thomas*, 482 U.S., at 490 [107 S.Ct. at p. 2525] (finding pre-empted a state

statute which rendered unenforceable private agreements to arbitrate certain wage collection claims)." (*Ibid.*)

In *Allied-Bruce Terminix Cos.* v. *Dobson, supra,* 513 U.S. at page 275 [115 S.Ct. at page 840], the Supreme Court stated that the "[a]ct's basic purpose" was to "put arbitration provisions on ' "the same footing" ' as a contract's other terms." In *Mastrobuono* v. *Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 55 [115 S.Ct. 1212, 1215, 131 L.Ed.2d 76], the Supreme Court held: "Earlier this Term, we upheld the enforceability of a predispute arbitration agreement governed by Alabama law, even though an Alabama statute provides that arbitration agreements are unenforceable. *Allied-Bruce Terminix Cos.* v. *Dobson,* 513 U.S. 265 [115 S.Ct. 834, 130 L.Ed.2d 753] (1995). Writing for the Court, JUSTICE BREYER observed that Congress passed the FAA 'to overcome courts' refusals to enforce agreements to arbitrate.' " In *Doctor's Associates, Inc.* v. *Casarotto* (1996) 517 U.S. 681, 688 [116 S.Ct. 1652, 1656-1657, 134 L.Ed.2d 902], the Supreme Court synthesized its 1989 ruling in *Volt Info. Sciences* as follows: "*Volt* involved an arbitration agreement that incorporated state procedural rules, one of which, on the facts of that case, called for arbitration to be stayed pending the resolution of a related judicial proceeding. The state rule examined in *Volt* determined only the efficient order of proceedings; it did not affect the enforceability of the arbitration agreement itself. We held that applying the state rule would not 'undermine the goals and policies of the FAA,' 489 U.S., at 478 [109 S.Ct. at p. 1255], because the very purpose of the Act was to 'ensur[e] that private agreements to arbitrate are enforced according to their terms,' [citation]."

The foregoing United States Supreme Court authority establishes the following general jurisprudence concerning the limited preemptive effect of the USAA. The "primary substantive provision of the Act" is section 2. (*Moses H. Cone Hospital* v. *Mercury Constr. Corp., supra,* 460 U.S. at p. 24 [103 S.Ct. at p. 941].) The intent or design of Congress has been variously described by the United States Supreme Court as follows: to "foreclose state legislative attempts to undercut the enforceability of arbitration agreements" (*Southland Corp.* v. *Keating, supra,* 465 U.S. at p. 16 [104 S.Ct. at p. 861]); " 'to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate,' " (*Volt Info. Sciences* v. *Leland Stanford Jr. U., supra,* 489 U.S. at p. 478 [109 S.Ct. at p. 1255]); the "very purpose" (*Doctor's Associates, Inc.* v. *Casarotto, supra,* 517 U.S. at p. 688 [116 S.Ct. at pp. 1656-1557]; *Ferro Corp.* v. *Garrison Industries, Inc.* (6th Cir. 1998) 142 F.3d 926, 936) and basic purpose of the USAA was to place arbitration agreements on " ' "the same footing as other contracts" ' " (*Volt Info. Sciences* v. *Leland Stanford Jr. U., supra,* 489 U.S. at p. 478 [109 S.Ct. at p. 1255]; *Scherk* v. *Alberto-Culver*

*Co.* (1974) 417 U.S. 506, 510 [94 S.Ct. 2449, 2452-2453, 41 L.Ed.2d 270]) and " 'motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered.' " (*Volt Info. Sciences* v. *Leland Stanford Jr. U., supra,* 489 U.S. at p. 478 [109 S.Ct. at p. 1255]; *Dean Witter Reynolds Inc.* v. *Byrd* (1985) 470 U.S. 213, 220 [105 S.Ct. 1238, 1242, 84 L.Ed.2d 158]). Although it has never directly confronted the issue, the United States Supreme Court has never held that sections 10 and 12 of the USAA apply in postarbitration proceedings in state courts. Further, although the issue has never been resolved by it, the United States Supreme Court has never held that the federal rule allowing judicial review of an award for a manifest disregard of the law preempts a different state rule.

### E. *Legislative History of the USAA*

In addition to *Rosenthal* and the United States Supreme Court jurisprudence in the field, it is appropriate to review the legislative history of the USAA. The USAA has its genesis in the arbitrations acts of New York and New Jersey. (*Rosenthal* v. *Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 406; Recommendation and Study Relating to Arbitration (Dec. 1960) 3 Cal. Law Revision Com. Rep., *supra,* at p. G-28; Feldman, *Arbitration Law in California: Private Tribunals for Private Government* (1957) 30 So.Cal.L.Rev. 375, 388, fn. 45.) After the adoption of the 1920 arbitration act in New York, the American Bar Association Committee on Commerce, Trade, and Commercial Law drafted a proposed federal arbitration statue. (Statement of W. H. H. Piatt, Jan. 9, 1924, Hearings on the Subject of Interstate Commercial Disputes Before the Subcommittees on the Judiciary, 68th Cong., 1st Sess., p. 10.) In the 67th Congress in 1922, Senate Bill No. 4214, which provided for a federal arbitration act, was introduced. (Sen. Bill No. 4214, 67th Cong., 4th Sess. (1922) pp. 1-10.) The purpose of the 1922 Senate bill was as follows, "The fundamental conception underlying the law is to make arbitration agreements valid, irrevocable, and enforceable." (Statement of Charles L. Bernheimer, Jan. 31, 1923, Hearings Before a Subcommittee on the Judiciary, 67th Cong., 4th Sess. p. 2.) The heading on Senate Bill No. 4214 was as follows: "A BILL [¶] To make valid and enforceable written provisions or arrangements for arbitration of disputes arising out of contracts, maritime transactions, or commerce among the States or Territories or with foreign nations." (Sen. Bill No. 4214, 67th Cong., 4th Sess. (1922) pp. 1-10); Letter of Herbert Hoover, Sect. of Commerce, to the Hon. Frank B. Brandegee, Chairman of the Sen. Judiciary Com., Jan. 7, 1924, appearing in Hearings on the Subject of Interstate Commercial Disputes Before the Subcommittees on the Judiciary, 68th Cong., 1st Sess., p. 20.) Senate Bill No. 4214 did not reach the senators and died in committee.

After some rewriting at the suggestion of members of Congress, the American Bar Association proposal was reintroduced. (Statement of W. H. H. Piatt, *supra*, at p. 10.) What would ultimately become the USAA was first introduced in the 68th Congress in the House of Representatives on December 5, 1923, as House Bill No. 646. (H.R. No. 646, 68th Cong., 1st Sess. (1923) pp. 1-11.) On December 12, 1923, the exact same bill was introduced in the United States Senate. (Sen. Bill No. 1005, 68th Cong., 1st. Sess. (1923) pp. 1-11.) As in the case of the bill introduced on December 16, 1922, in the fourth session of 67th Congress, the two bills introduced in the House of Representatives and the Senate, which ultimately became the USAA, were headed: "A BILL [¶] To make valid and enforceable written provisions or arrangements for arbitration of disputes arising out of contracts, maritime transactions, or commerce among the States or Territories or with foreign nations." (H.R. No. 646, 68th Cong., 1st Sess. (1923) p. 1; Sen. Bill No. 1005, 68th Cong., 1st. Sess. (1923) p. 1.) While the 1923 legislation was under consideration by the 68th Congress in 1924, the Congress had before it the record of the aforementioned January 31, 1923, hearings before the 67th Congress where the concept of a national arbitration law was considered. (Statement of Charles L. Bernheimer, Jan. 9, 1924, Hearings on the Subject of Interstate Commercial Disputes Before the Subcommittees on the Judiciary, 68th Cong., 1st Sess., p. 6.)

The report prepared in the House of Representatives stated: "The purpose of this bill is to make valid and enforceable agreements for arbitration contained in contracts involving interstate commerce or within the jurisdiction o[f] admiralty, or which may be the subject of litigation in the Federal courts." (H.R. Rep. No. 96, 68th Cong., 1st Sess. (1924) p. 1.) The report prepared for the Senate identified the purpose of the bill as follows: "The purpose of the bill is clearly set forth in section 2, which, as proposed to be amended, reads as follows: [¶] Sec. 2. That a written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." (Sen. Rep. No. 536, 68th Cong., 1st Sess. (1924) p. 2.) The Senate report emphasized that the effect of the bill would be to abolish the judicial reluctance to enforce arbitration agreements. (*Id.*, at pp. 2-3.) During Senate debate, Senator Thomas J. Walsh, stated: "In short, the bill provides for the abolition of the rule that agreements for arbitration will not be specifically enforced." (Remarks of Sen. Walsh, 68 Cong. Rec. 984 (1924).) The same point was raised during

House debate. (Remarks of Congressman Graham, 68 Cong. Rec. 1931 (1924).)

There was virtually no mention of what is now section 10 of the USAA in the legislative committee reports and none in congressional debates. The 1924 House report stated: "The award may then be entered as a judgment, subject to attack by the other party for fraud and corruption and similar undue influence, or for palpable error in form." (H.R. Rep. No. 96, 68th Cong., 1st Sess., *supra*, p. 2.) The 1924 Senate report stated that the award could be set aside where: it was secured by "corruption, fraud, or undue means"; "there was partiality or corruption on the part of the arbitrators"; in a situation where an arbitrator has been guilty of misconduct or refused to hear evidence; there was prejudicial misbehavior by the parties; and the arbitrator has exceeded his or her powers. (Sen. Rep. No. 536, 68th Cong., 1st. Sess., *supra*, p. 4.) A brief on the proposed USAA and made a part of the record during Senate hearings stated: "The courts are bound to accept and enforce the award of the arbitrators unless there is in it a defect so inherently vicious that, as a matter of common morality, it ought not to be enforced. This exists only when corruption, partiality, fraud or misconduct are present or when the arbitrators exceeded or imperfectly executed their powers or were influenced by other undue means—cases in which enforcement would obviously be unjust. There is no authority and no opportunity for the court, in connection with the award, to inject its own ideas of what the award should have been." (Statement of W. W. Nichols, Jan. 9, 1924, Hearings on the Subject of Interstate Commercial Disputes Before the Subcommittees on the Judiciary, 68th Cong., 1st Sess., p. 36.) Nothing in the legislative reports and debates evidences a congressional intention that postaward and state court litigation rules be preempted so long as the basic policy upholding the enforceability of arbitration agreements remained in full force and effect.

F. *The Nonstatutory Basis of the Manifest Disregard of the Law Test*

Every federal circuit that has discussed the issue has recognized the manifest disregard of the law standard for vacating an arbitration award is a judicially created standard; it is not part of the USAA. (*Prudential-Bache Securities, Inc.* v. *Tanner* (1st Cir. 1995) 72 F.3d 234, 237; *DiRussa* v. *Dean Witter Reynolds Inc.* (2d Cir. 1997) 121 F.3d 818, 821; *Glennon* v. *Dean Witter Reynolds, Inc.* (6th Cir. 1996) 83 F.3d 132, 135; *Nat. R. R. Pass. Corp.* v. *Chesapeake & O. Ry.* (7th Cir. 1977) 551 F.2d 136, 143; *Sheet Metal Wkrs. Intern. Ass'n* v. *Kinney Air Cond.* (9th Cir. 1985) 756 F.2d 742, 746; *Denver & Rio Grande Western R.* v. *Union Pac. R.* (10th Cir. 1997) 119 F.3d 847, 849; *O.R. Securities* v. *Professional Planning Assoc.* (11th Cir. 1988) 857 F.2d 742, 746; *Al-Harbi* v. *Citibank, N.A.* (D.C. Cir. 1996) 85 F.3d 680,

682 [318 App.D.C. 114].) This is because the manifest disregard of the law doctrine is not statutorily based but is premised on federal common law. (See *Jih* v. *Long & Foster Real Estate, Inc.* (D.Md. 1992) 800 F.Supp. 312, 317; *United Indus. Workers* v. *Government of V.I.* (D.V.I. 1992) 792 F.Supp. 420, 428; *Warth Line, Ltd.* v. *Merinda Marine Co., Ltd.* (S.D.N.Y. 1991) 778 F.Supp. 158, 161; *Chasser* v. *Prudential-Bache Securities* (S.D.Fla. 1988) 703 F.Supp. 78; Levin, *The Role Of Substantive Law In Business Arbitration And The Importance Of Volition* (1997) 35 Am. Bus. L.J. 105, 134; Gelander, *Judicial Review of International Arbitral Awards: Preserving Independence In International Commercial Arbitrations* (1997) 80 Marq. L.Rev. 625, 634; Bukhman, *Time Limits on Arbitrability of Securities Industry Disputes Under the Arbitration Rules of Self-Regulatory Organizations* (1995) 61 Brook. L.Rev. 143, 151.) Hence, the manifest disregard of the law doctrine is not based on the USAA; it is a creature of judicial common law.

G. *Conclusions Concerning the Application of Sections 10 and 12 of the USAA and the Manifest Disregard of the Law Standard to the Present Case*

Based on the foregoing, we conclude neither sections 10 and 12 nor the manifest disregard of the law rule preempts the California rule which prevents reweighing the merits of an arbitrator's decision. The language of section 10 with its reference to courts of the United States and the "district" where the award was made is inconsistent with it being applicable to litigation before state judges. Further, the reference in section 12 of the USAA to the district where service can be made is consistent with application to federal court postarbitration litigation involving the merits of the award. Moreover, the reference to service by a "marshal" on a nonresident party of an application to set aside an award is consistent with the application to federal courts. Further, *Rosenthal* and relevant United States Supreme Court decisions make it clear not all elements of the USAA apply to state court litigation involving arbitrations. The United States Supreme Court has noted that the principal purpose of the USAA is to ensure the enforcement of arbitration agreements. Nothing in the legislative history of the USAA indicates in any fashion that Congress intended that state courts be compelled to vacate an award under sections 10 and 12 or in the face of a manifest disregard of the law in connection with the merits of the controversy. Moreover, the principal preemptive effect of the USAA occurs when a state law conflicts with the purpose of "ensuring that private agreements to arbitrate are enforced according to their terms." (*Volt Info. Sciences* v. *Leland Stanford Jr. U.*, *supra*, 489 U.S. at p. 479 [109 S.Ct. at pp. 1255-1256]; *Ekstrom* v. *Value Health, Inc.* (D.C. Cir. 1995) 68 F.3d 1391, 1396 [314 App.D.C. 340].) Finally, contrary to defendants' arguments the manifest

disregard of the law test is not premised on the USAA; it is a common law rule applied by the federal courts. Therefore, we reject defendants' contention that the USAA permits us to evaluate whether merits of the award were the result of a manifest disregard of the law. Instead, we apply the provisions of Code of Civil Procedure section 1286.2. (*Ante*, fn. 3.)[7]

H.-K.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

The judgments are affirmed. Plaintiff, Howard Siegel, is to recover his costs on appeal from defendants, the Prudential Insurance Company of America and James Dinges.

Grignon, J., and Armstrong, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 24, 1999.

---

[7]Our conclusion that the USAA does not require us to apply section 10 to this case is consistent with decisions in other jurisdictions. In *Atlantic Painting* v. *Nashville Bridge Co.* (Ky. 1984) 670 S.W.2d 841, 846, the Kentucky Supreme Court noted in what arguably was dictum that section 10 did not preempt state procedures for vacating an arbitration award. In *Eckstrom* v. *Value Health, Inc., supra,* 68 F.3d at page 1393, the District of Columbia Circuit held that a Connecticut limitation on the time in which to file a motion to vacate an award which was different from that specified in section 12 was not preempted by the USAA. In *DeBaker* v. *Shah* (1994) 187 Wis.2d 252 [522 N.W.2d 268, 271-272], the Wisconsin Supreme Court held its own state law concerning vacating an award was not preempted by the USAA. In *Baxter Health Care* v. *Harvard Apparatus* (1993) 35 Mass.App.Ct. 204, 205, footnote 2 [617 N.E.2d 1018, 1020], the Appeals Court of Massachusetts held that proceedings concerning vacating an award were not controlled by the USAA. Finally, the only California decision to discuss the application of the manifest disregard of the law rule did so 29 years ago without reference to the USAA and held it was inapplicable to judicial review of arbitration awards in this state's courts. (*Lesser Towers, Inc.* v. *Roscoe-Ajax Constr. Co.* (1969) 271 Cal.App.2d 675, 700-701 [77 Cal.Rptr. 100].)

*See footnote, *ante*, page 1270.